**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| HM COMPOUNDING SERVICES, INC,<br>and HMX SERVICES, LLC, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | No. 4:14-CV-1858 JAR |
| EXPRESS SCRIPTS, INC., | ) <br> ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the following motions: Defendant Express Scripts' Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") (Doc. No. 129); Defendant Express Scripts' Motion to Dissolve the Temporary Restraining Order (Doc. No. 153); Defendant Express Scripts' Motion for Temporary Stay of Discovery and Protective Order (Doc. No. 157); and Plaintiffs' Motion for Civil Contempt. (Doc. No. 169) The motions are fully briefed and ready for disposition. The Court held a hearing on the motions on April 22, 2015.

### I.      Background

Plaintiff HM Compounding Services, LLC, is an independent compounding pharmacy that provides customized medications to patients. Plaintiff HMX Services, LLC, is HM Compounding Services, LLC's New Jersey affiliated pharmacy. (Plaintiffs are collectively referred to herein as "HMC"). Defendant Express Scripts, Inc. ("ESI") is a prescription benefit manager ("PBM"). PBMs administer the prescription pharmaceutical portion of health care benefit programs, which are typically purchased by a plan sponsor. The parties' relationship is governed by a Pharmacy Provider Agreement entered into by and between ESI and Wholesale

Alliance, LLC d/b/a Third Party Station on behalf of HMC (the "Provider Agreement"), pursuant to which HMC agreed to provide certain pharmacy services to ESI members in exchange for ESI's agreement to compensate HMC for those pharmacy services.

By letter dated July 22, 2014, HMC informed ESI it had become aware that ESI was directly notifying providers that they were not to continue prescribing compounded medications even if it was in the patient's best interest to receive them. Seven days later, on July 31, 2014, ESI sent HMC a "notice of immediate termination" of the Provider Agreement, effective September 1, 2014, based on alleged misrepresentations made by HMC to ESI regarding "waiver/reduction" of patients' copayments. By letter dated August 1, 2014, ESI responded to HMC's July 22, 2014 letter. In that letter, ESI did not deny making such statements to prescribing physicians; rather, it took the position that ESI "has a legal right to communicate with providers regarding benefit coverage issues." (FAC, Doc. No. 126 at ¶ 110)

HMC brought this action on September 10, 2014 in the Supreme Court of the State of New York, County of Nassau.[1] On September 11, 2014, the New York State Court entered a temporary restraining order (the "State Court TRO") ordering ESI to "reinstate in full force and effect nunc pro tunc" "the Network Pharmacy Agreement dated September 5, 2012, entered into by and between HMC and Wholesale Alliance TPS, LLC d/b/a/ Third Party Station on behalf of Third Party Payer ESI" (see Doc. No. 23-2 at 4 ¶ (e)), and enjoining ESI from, among other things, "refusing to process and pay claims for payment submitted by HMC for compounded medications prescribed by physicians for their patients who have prescription drug benefits administered by [ESI]." (Id. at 3 ¶ (b))

---

[1] The procedural history of the case is set out in the transferring court's October 27, 2014 Memorandum of Decision and Order in *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400 (E.D.N.Y. 2014).

The next day ESI removed the case to the United States District Court for the Eastern District of New York. The parties consented to extend the State Court TRO until a determination of pending motions to transfer venue. On October 3, 2014, the New York District Court vacated the State Court TRO and entered a second temporary restraining order (the "Federal Court TRO") enjoining Express Scripts from "refusing to process and/or pay claims submitted by [HMC] for the payment of prescriptions dated on or after September 11, 2014, or for the refill of an existing refillable prescription after September 11, 2014, for compounded medications prescribed by licensed physicians for their patients, which had heretofore been covered by their insurance." (Doc. No. 70 at 3 ¶ (b)) The District Court further ordered upon agreement of the parties that the TRO remain in full force and effect until a hearing on the preliminary injunction. (Id. at 4)

On October 27, 2014, the New York District Court severed HMC's claims against ESI and transferred them to this Court. (Doc. No. 108 at 54) The New York Court ruled that that part of the Federal TRO applicable to HMC is extended until such time as the respective arbitrator hears and determines any application for injunctive relief and that any requests to revisit the terms should be directed to the appropriate arbitrator, or, with respect to ESI, the federal district court in Missouri. (Id. at 59)

On December 1, 2014, HMC filed its FAC asserting eleven causes of action against ESI:

i)     a violation of the Sherman Act, 15 U.S.C. § 1;

ii)    a violation of New York Antitrust Law, New York General Business Law § 340.1 (Donnelly Act);

iii)    a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B);

iv)    a claim for injunctive relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3);

v)       a claim for deceptive trade practices, in violation of New York General Business Law § 349;

vi)      a claim for violation of New Jersey's "Any Willing Provider" Laws, N.J.S.A. §§ 17B:26-2.1i, 17B:27-46.1i;

vii)     a claim for breach of contract;

viii)    a claim for breach of the implied covenant of good faith and fair dealing;

ix)      a claim for tortious interference with a business expectancy;

x)       a claim for declaratory relief; and

xi)      a claim for preliminary and permanent injunction.

## II.    Discussion

### A.  Motion to dismiss

ESI moves to dismiss the FAC for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the Court must assume all the facts alleged in the complaint are true, and liberally construe the complaint in the light most favorable to the plaintiff. Foster v. Deutsche Bank Nat'l Trust Co., 2012 WL 5285887, at *2 (E.D. Mo. Oct. 25, 2012) (citing Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008)). The allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). Thus, a dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th

Cir. 2004) (quoting <u>Frey v. Herculaneum</u>, 44 F.3d 667, 671 (8th Cir. 1995) (internal quotation marks omitted)).

**1. Antitrust claims[2] (Counts I-II)**

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade." 15 U.S.C. § 1.[3] Not every agreement that restrains competition violates the Sherman Act. <u>See</u> <u>Craftsmen Limousine, Inc. v. Ford Motor Co.</u>, 491 F.3d 380, 386 (8th Cir. 2007). Rather, the Sherman Act prohibits "only those practices that impose an unreasonable restraint on competition." <u>Id.</u> (quoting <u>Arizona v. Maricopa Cnty. Med. Soc'y</u>, 457 U.S. 332, 342-43 (1982) (internal quotation marks omitted).

To establish a claim under Section 1 of the Sherman Act, a plaintiff must demonstrate "(1) that there was a contract, combination, or conspiracy; (2) that the agreement unreasonably restrained trade under either a *per se* rule of illegality or a rule of reason analysis; and (3) that the restraint affected interstate commerce." <u>Reg'l Multiple Listing Serv. of Minnesota, Inc. v. Am. Home Realty Network, Inc.</u>, 9 F. Supp. 3d 1032, 1039 (D. Minn. 2014) (quoting <u>Insignia Sys., Inc. v. News Am. Mktg. In–Store, Inc.</u>, 661 F. Supp. 2d 1039, 1062 (D. Minn. 2009) (internal quotation marks omitted)). Courts are generally hesitant to dismiss antitrust actions before the

---

[2] The Court notes similar claims under sections 1 and 2 of the Sherman Act have been filed in federal district courts by independent pharmacies against various PBMs, including Medco, Caremark and ESI. <u>See</u> <u>N. Jackson Pharmacy v. Express Scripts Inc.</u>, 345 F. Supp. 2d 1279 (N.D. Ala. 2004); <u>N. Jackson Pharmacy, Inc. v. Medco Health Solutions, Inc.</u>, 2004 WL 3372978 (N.D. Ala. 2004); <u>N. Jackson Pharmacy, Inc. v. Caremark RX, Inc.</u>, 385 F.2d 740 (N.D. Ill. 2005); <u>Mike's Med. Ctr. Pharmacy v. Medco Health Solutions, Inc.</u>, No. 3:05-5108 (N.D. Cal.); <u>Brady Enters., Inc. v. Medco Health Solutions, Inc.</u>, 2003 WL 23902806 (E.D. Pa. 2003); <u>Bellevue Drug Co. v. Advance PCS</u>, 333 F. Supp. 2d 318 (E.D. Pa. 2004). The Judicial Panel on Multidistrict Litigation consolidated these cases and transferred them to the Eastern District of Pennsylvania in 2006. <u>See</u> <u>In re Pharm. Benefit Managers Antitrust Litig.</u>, 452 F. Supp. 2d 1352 (J.P.M.L. 2006).

[3] The Donnelly Act, N.Y. Gen. Bus. L. § 340, is modeled on the Sherman Act and generally construed in accordance with federal precedent. <u>See</u> <u>Menkes v. St. Lawrence Seaway Pilots' Ass'n</u>, 269 Fed. Appx. 54, 55 n.3 (2d Cir. 2008) (citing cases). The Court will therefore evaluate HMC's claims under the Sherman Act and the Donnelly Act together.

parties have had an opportunity for discovery, "because the proof of illegal conduct lies largely in the hands of the alleged antitrust conspirators." Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 560 (8th Cir. 1998) (citing Huelsman v. Civic Ctr. Corp., 873 F.2d 1171, 1174 (8th Cir.1989)). Nevertheless, "[t]he essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's Rule 12(b)(6) motion." Id. at 558 (quoting Crane & Shovel Sales Corp. v. Bucyrus-Erie Co., 854 F.2d 802, 805 (6th Cir. 1988) (internal quotation marks omitted).

Here, HMC alleges ESI conspired "to end all coverage for compound prescription medications, and eliminate HMC and other independent compounding pharmacies as competitors in the Relevant Market" (FAC at ¶¶ 48, 124), and that this conduct constitutes both a per se and rule of reason claim under the Sherman Act. (Id. at ¶¶ 126-27)

Most antitrust claims are evaluated under the rule of reason. Craftsmen Limousine, 491 F.3d at 387; Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp., 208 F.3d 655, 659 (8th Cir. 2000). Under this approach, an antitrust plaintiff must show an anticompetitive effect on the relevant market. Flegel v. Christian Hosp., Northeast-Northwest, 4 F.3d 682, 688 (8th Cir. 1993). Under the *per se* rule, certain types of restraints are so inherently anticompetitive that they are illegal per se, without inquiry into the reasonableness of the restraint or the harm caused. Double D Spotting Serv., 136 F.3d at 558 (citing Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 768 (1984)). Per se treatment is applied only when the adverse impact on competition is "obvious and substantial." Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of Rhode Island, 239 F. Supp. 2d 180, 189 (D.R.I. 2003). ESI argues the per se rule should not be applied to HMC's antitrust claims because the conduct asserted, i.e., refusal to deal and/or boycott, is not the type with "immediately obvious" economic impacts. (Doc. No. 130 at 8-9)

A group boycott is "a narrow category of per se violation, limited to cases in which firms with market power boycott suppliers or customers in order to discourage them from doing business with a competitor." <u>Minn. Nurse Anesthetists</u>, 208 F.3d at 659 (quoting <u>FTC v. Indiana Fed'n of Dentists</u>, 476 U.S. 447, 458 (1986)). HMC alleges the agreement to boycott HMC is a horizontal agreement between ESI and its co-conspirators, CVS Caremark Corporation ("CVS"), Optum Rx ("ORx") and Prime Therapeutics, LLC ("Prime") (collectively referred to as the co-conspirators)[4], all of which are PBMs and operate at the same level of the market. (FAC at ¶¶ 16-22, 124) In addition, ESI, CVSC, and Prime own and operate specialty pharmacies that compete with HMC and ESI and each of the co-conspirators operate mail-order pharmacies that also compete with HMC. (<u>Id</u>. at ¶¶ 13-19) Because PBMs manage 95 percent of all prescription drugs covered by insurance, and because ESI and the co-conspirators exercise control over more than 80 percent of the PBM market, HMC argues these firms occupy a dominant position in the prescription drug benefit market. ESI and the co-conspirators have used that power to preclude HMC from obtaining access to reimbursements from health plans and insurance for prescription medications—a supply necessary for HMC to compete. (<u>Id</u>. at ¶¶ 22, 115, 126(b)) Without access to insurance plans for prescription medications, HMC alleges that it and other independent compounding pharmacies will be driven out of business. (<u>Id</u>. at ¶ 115) HMC further alleges on information and belief that ESI and its co-conspirators' boycott is intended to channel patients to their own competing pharmacies and has resulted in anticompetitive effects in the market, including decreased output of prescription drugs, reduced consumer choice, and a decline in the quality of prescription drugs available to patients. (<u>Id</u>. at ¶ 121)

---

[4] HMC alleges ESI conspired with CVS, ORx and Prime, as well as "other individuals and entities, known and unknown," not named in the complaint. (FAC at ¶¶ 16-18, 20)

Although the question whether HMC's allegations "comprise a per se claim is normally a question of legal characterization that can often be resolved … on a motion to dismiss or for summary judgment[,]" see Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I., 373 F.3d 57, 61 (1st Cir. 2004), the Court will not dismiss HMC's pro se claim at this time. See Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma, 468 U.S. 85, 104 n. 26 (1984) ("Indeed, there is often no bright line separating per se from rule of reason analysis. Per se rules may require considerable inquiry into market conditions before the evidence justifies a presumption of anticompetitive conduct."). Even if HMC fails to establish a per se violation of the Sherman Act, the question remains whether the allegedly unreasonable restraint of trade comports with the rule of reason, discussed below.

ESI raises three specific challenges to HMC's antitrust claims: (1) HMC fails to allege an unlawful agreement or conspiracy between ESI and its co-conspirators; (2) HMC fails to adequately plead injury to competition in a relevant market; and (3) HMC has not alleged an antitrust injury sufficient for standing. The Court will address each of these in turn.

**Contract, combination or conspiracy**

In order to allege a conspiracy under § 1 of the Sherman Act, HMC must show there was concerted, as opposed to unilateral, action. Willman v. Heartland Hosp. E., 34 F.3d 605, 610 (8th Cir. 1994). "The antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that [the defendant] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective." Monsanto Co. v. Spray–Rite Serv. Corp., 465 U.S. 752, 764 (1984) (internal citation and quotation marks omitted). Mere allegations of parallel conduct will not suffice. Twombly, 550 U.S. at 556-67 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some

unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement[.]").

In support of its motion, ESI argues HMC has not alleged a plausible agreement or conspiracy among ESI and its purported co-conspirators. (Doc. No. 130 at 6-8) Citing <u>Twombly</u>, ESI contends HMC has alleged "merely parallel conduct" that could just as well be independent action. HMC responds that read as a whole, the FAC alleges more than enough factual matters to suggest an agreement was made to satisfy <u>Twombly</u>'s pleading standard. (Doc. No. 142 at 5-9) The Court agrees.

Here, HMC alleges ESI and each of the co-conspirators are active members of the Pharmaceutical Care Management Association ("PCMA"), the national association that "represent[s] America's pharmacy benefit managers (PBMs)." (FAC at ¶ 56) The PCMA "facilitates communication and collaboration among leaders in the PBM industry to shape the industry's direction and explore collaborative solutions to industry issues." (<u>Id</u>. at ¶ 58) (internal quotation marks omitted). Executives from ESI and each of the co-conspirators serve on the PCMA's Board of Directors, and regularly met in 2013 to discuss the PBM industry and explore collaborative "solutions" to industry "issues." (<u>Id</u>. at ¶¶ 57-59) Membership and participation in a trade group facilitates collusion. <u>See</u> <u>Evergreen Partnering Grp. v. Pactiv Corp.</u>, 720 F.3d 33, 49 (1st Cir. 2013); <u>In re Text Messaging Antitrust Litig.</u>, 630 F.3d 622, 628 (7th Cir. 2010).

HMC further alleges ESI is the nation's largest PBM; CVS or ORx are the second and third largest respectively. (FAC at ¶¶ 13, 16-17) PBMs manage 95 percent of all prescription drugs covered by insurance, and ESI and the co-conspirators dominate the PBM market with a market share of over 80 percent. (<u>Id</u>. at 22) The highly concentrated nature of the PBM industry

also supports an inference of conspiracy. <u>See</u> <u>Evergreen Partnering Grp.</u>, 720 F.3d at 48 (complaint adequately alleged Section 1 boycott violation with allegations that five defendants controlled 90 percent of the market and participation of at least one defendant was necessary for plaintiff to enter the market); <u>In re Text Messaging Antitrust Litig.</u>, 630 F.3d at 628 ("[T]he complaint in this case alleges that the four defendants sell 90 percent of U.S. text messaging services, and it would not be difficult for such a small group to agree on prices and to be able to detect 'cheating' (underselling the agreed price by a member of the group) . . . ."). <u>See also</u> <u>Starr v. Sony BMG Music Entm't</u>, 592 F.3d 314, 323-24 (2d Cir. 2010) (citing 7 Phillip E. Areeda and Hebert Hovenkamp, *Antitrust Law* at § 1431a (2d ed. 2003) (allegation that "defendants control over 80%" of the market supported inference of conspiracy); <u>Todd v. Exxon Corp.</u>, 275 F.3d 191, 208 (2d Cir. 2001) ("Generally speaking, the possibility of anticompetitive collusive practices is most realistic in concentrated industries.").

In this context, HMC alleges that in 2013, ESI and its co-conspirators joined together to study the market for compound prescriptions and collectively determine how to exclude compound medicines in 2014. (FAC at ¶ 60) In 2014, ESI and the co-conspirators are alleged to have sent letters to prescribing physicians containing false and misleading information regarding compound medications and contacted prescribing physicians by telephone to impliedly threaten them with retaliation if they continued to prescribe compound medicines. (<u>Id</u>. at ¶¶ 68-69) Similar letters were sent to patients advising them that compound medications are not FDA-approved. (<u>Id</u>. at ¶¶ 71-72, 76) HMC further alleges ESI and the co-conspirators each required prior authorizations from physicians for compound medications that exceeded a threshold dollar amount, intentionally set to be an amount too low to cover most, if not all, compound medication

claims, and then each adjusted that threshold amount to ensure that compound medication claims would categorically be denied. (Id. at ¶¶ 83-84)

Then, CVS and ESI announced new policies regarding copayments allegedly aimed at excluding compound medications within days of each other in late May and early June of 2014. (Id. at ¶¶ 87-88, 91) For example, on May 30, 2014, CVS announced that compounders must include at least two scientifically valid studies in peer-reviewed journals supporting the clinical efficacy of the additional ingredients, despite the lack of peer-reviewed medical literature on compound preparation and individual ingredients. (Id. at ¶ 88) On or about June 3, 2014, ESI launched its "Compound Management Solution" and a formal campaign to inform providers that it would not pay claims for compound medications. HMC alleges ESI's "Solution" will eliminate the prior authorization option for compound medications and instead "automatically reject" any claim for such medications. In addition, effective September 15, 2014, ESI eliminated coverage for 1,000 compound ingredients. (Id. at ¶¶ 90-91) Likewise, ORx informed HMC that URAC accreditation was required to provide network compounding services, despite the fact that URAC does not have an accreditation program for compounding pharmacies. (Id. at ¶ 95) These policy changes, made at or around the same time by multiple competitors, are also indicative of conspiracy. See In re Text Messaging Antitrust Litig., 630 F.3d at 628 ("[C]omplex and historically unprecedented changes in pricing structure made at the very same time by multiple competitors, and made for no other discernible reason would support a plausible inference of conspiracy.") (citing Twombly, 550 U.S. at 557 n. 4) (internal quotation marks omitted)).

Further, CVS suspended HMC on June 30, 2014 – five days after ORx terminated HMC and within one month of ESI's issuance of its notice of termination to HMC. (FAC at ¶ 107-110) The timing of, and similarity between, ESI and the co-conspirators' actions following their

PCMA meeting in 2013, provides a plausible relationship between the PCMA meeting and these actions.

For these reasons, the Court finds HMC has sufficiently alleged a preceding agreement to engage in concerted action. See Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 184 (2d Cir. 2012) ("[T]o present a plausible claim at the pleading stage, the plaintiff need not show that its allegations suggesting an agreement are more likely than not true or that they rule out the possibility of independent action, as would be required at later litigation stages such as a defense motion for summary judgment[.]").

**Injury to competition in a relevant market**

It is HMC's burden to define the relevant market. Double D Spotting Serv., 136 F.3d at 560. "The definition of the relevant market has two components—a product market and a geographic market." Id. (quoting Bathke v. Casey's Gen. Stores, Inc., 64 F.3d 340, 345 (8th Cir. 1995) (internal quotation marks omitted)). "The relevant product market includes all reasonably interchangeable products." Id. (citing Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997)). The geographic market is defined by considering the "commercial realities" faced by consumers. Id. (citing Bathke, 64 F.3d at 345). "It includes the geographic area in which consumers can practically seek alternative sources of the product, and it can be defined as the market area in which the seller operates." Id. (quoting Tampa Elec. Co. v. Nashville Coal Co., 365 U.S. 320, 327 (1961) (internal quotation marks omitted)).

HMC alleges the relevant service market affected by ESI and the co-conspirator's conduct is "pharmacy services that are reimbursed by insurance, including, but not limited to, the compounding, filling, and dispensing of prescription medications." (FAC at ¶ 52) The relevant product market "is prescription drugs that are reimbursed by insurance, including, but not limited

to, compounded prescription drugs" (Id.), and the relevant geographic market for activity that affects HMC is the Eastern United States, including, but not limited to, New York and New Jersey. (Id. at ¶ 53) HMC further alleges the conduct of ESI and the co-conspirators has had the effect of "unreasonably restraining, suppressing, and eliminating competition in the provision of pharmacy services and the dispensation of prescription drugs covered by insurance in all markets in which HMC did and could operate in interstate commerce." (Id. at ¶ 54)

ESI argues HMC's proposed relevant market fails to adequately account for comparable substitutes in the marketplace. (Doc. No. 130 at 10-11) Specifically, HMC limits the market to "prescription drugs that are reimbursed by insurance," when the reality of the marketplace is that some consumers are insured, some are not, and different consumers' insurance coverage differs depending on their health plans. (Id. at 11) ESI further argues that in an attempt to give the appearance of broader harm to the market, HMC aligns itself with unnamed "other independent compounding pharmacies." As a result, the boundaries of the relevant product market cannot be determined. (Id.)

In response, HMC argues there are material distinctions between insured and uninsured patients, including quantity and ability to pay. In other words, there are not enough uninsured patients capable of purchasing prescription medications to constitute an interchangeable source of demand. (Doc. No. 142 at 14-15) Indeed, in Stop & Shop, the court acknowledged the number of retail customers whose purchases of prescription drugs are not reimbursed by insurance "could be so small a group that foreclosure of a large percentage of reimbursed customers would still be fatal," but stated this would have to be proved. 373 F.3d at 67.

There is no requirement that market definition be pled with specificity. Cost Mgmt. Servs., Inc. v. Washington Natural Gas Co., 99 F.3d 937, 950 (9th Cir. 1996). An antitrust

complaint therefore survives a Rule 12(b)(6) motion unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect. And since the validity of the relevant market is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing on summary judgment or at trial. See High Technology Careers v. San Jose Mercury News, 996 F.2d 987, 990 (9th Cir. 1993) (holding that the market definition depends on "a factual inquiry into the commercial realities faced by consumers") (internal quotation marks omitted)). Accordingly, granting all factual inferences in HMC's favor, the Court finds HMC has sufficiently pled a relevant market.

ESI also argues HMC has not adequately pled facts explaining how ESI's allegedly anticompetitive conduct actually restrained trade or harmed consumers. In other words, HMC has not pled a market injury – only injury to itself. (Doc. No. 130 at 9-10)

The FAC alleges the conduct of ESI and the co-conspirators has had a "substantial and continuing anticompetitive effect on the Relevant Market" in the following ways:

a) eliminating compounding pharmacy services and compound medications from the Relevant Market;

b) substantially decreasing the output and/or supply of pharmaceutical services and prescription drugs in the Relevant Market;

c) depriving patients of meaningful choice in and access to pharmaceutical services and prescription drugs in the Relevant Market;

d) depriving patients of medically-necessary pharmaceutical services and prescription drugs in the Relevant Market;

e) reducing or eliminating the prescription of compound medications by physicians in the Relevant Market;

f) diverting patients away from Plaintiff HMC and other independent compounding pharmacies to Defendant ESI and the Co-conspirators' various mail-order and specialty pharmacies that are in competition with Plaintiff HMC and other independent compounding pharmacies in the Relevant Market, including, but not

limited to, Accredo, Freedom Fertility Pharmacy, and Express Scripts Pharmacy, among others; and

g) hindering innovation, price-competition, and patient choice in the delivery of pharmaceutical services and prescription drugs in the Relevant Market by imposing and maintaining high barriers to entry and participation therein.

(FAC at ¶127)

Allegations of anti-competitive effects sufficient to state a claim under § 1 of the Sherman Act include the elimination of a market competitor, a decrease in output, reduced consumer choice, and a decline in the quality of goods. See Full Draw Prods. v. Easton Sports, Inc., 182 F.3d 745, 755 (10th Cir. 1999) (identifying "the elimination of a competitor" as the "anticompetitive effect of the boycott" in a group boycott claim under Section 1); Reg'l Multiple Listing Serv. of Minnesota, Inc. v. Am. Home Realty Network, Inc., 960 F. Supp. 2d 958, 985 (D. Minn. 2013) ("Significant anti-competitive effects may include . . . a decrease in output, or a decline in quality.") (internal quotation marks omitted)). See also N. Jackson Pharmacy v. Express Scripts, where the court found allegations that defendants' "practices harms consumers . . . by eliminating independent pharmacists nationwide"; "defendants' anticompetitive conduct is done with the purpose and specific intent to expand . . . their stranglehold on the market of insurance reimbursed prescription drug sales"; defendants' "practices will ultimately drive independent pharmacists out of business," which will "harm competition in the marketplace," all adequately alleged anti-competitive effects under the Federal Rules' "simplified pleading standard." 345 F. Supp. 2d at 1291 (internal quotation marks omitted).

**Antitrust injury**

Finally, to have standing to assert a private damages action under federal antitrust laws, a plaintiff must allege it has suffered an antitrust injury. Lovett v. Gen. Motors Corp., 975 F.2d 518, 520 (8th Cir. 1992) (citations omitted). An antitrust injury is "a loss that Congress intended

to prevent with the antitrust laws and that flows from the unlawfulness of the defendant's acts." Id. (citing Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977)).

In its amended complaint, HMC alleges that "[a]s a direct and proximate result of Defendant ESI and the Co-conspirators' concerted conduct, … HMC has been and will continue to be irreparably injured and financially damaged in its business and property in that, among other things, … HMC has suffered and will continue to suffer significant lost revenue and net profits from the substantial decrease in reimbursements from compound medicines covered by health insurance policies and plans. In addition, [HMC] has not received reimbursements for thousands of prescriptions already filled and submitted to Defendant ESI." (FAC at ¶ 128) ESI asserts this is insufficient to establish an antitrust injury required for standing. ESI argues that reimbursements for covered medications were a benefit of membership in its pharmacy provider network and that its termination of the provider agreement – not any alleged anticompetitive conduct – is the proximate cause of HMC's claimed injuries. (Doc. No. 130 at 13-14)

Relying on Doctor's Hosp. of Jefferson, Inc. v. Se. Med. Alliance, Inc., 123 F.3d 301 (5th Cir. 1997), HMC responds that its alleged injury – financial loss caused by its exclusion from the market by group boycott – is precisely the type of injury the antitrust laws were intended to prevent. (Doc. No. 142 at 16) In Doctor's Hosp., a hospital which had been replaced by a health care plan as a provider sued the plan and the replacement hospital, alleging violations of federal and state antitrust laws. The court held the hospital established antitrust standing because standing did not require a showing of injury to competition in the marketplace. Id. at 304-06.

ESI replies that while injury to competition is not an element of antitrust injury in the Fifth Circuit, in the Eighth Circuit, "the requisite antitrust injury must reflect the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation." See

In re Canadian Import Antitrust Litig., 470 F.3d 785, 791 (8th Cir. 2006); Steel v. City of Bemidji, 257 F.3d 902, 906 (8th Cir. 2001). (Doc. No. 146 at 10) The Eighth Circuit went on to state, however, that "we also consider the causal connection between the alleged antitrust violation and harm to the plaintiff [and] the directness or indirectness of the asserted injury …" Canadian Import, 470 F.3d at 791. Thus for purposes of a motion to dismiss, HMC has sufficiently pled an antitrust injury by asserting that ESI excluded it as a competitor from the marketplace.

In sum, after construing the allegations in the light most favorable to HMC, the Court finds HMC's amended complaint adequately alleges violations of Sherman Act. The Court likewise concludes HMC has adequately alleged claims against ESI under New York antitrust law. Accordingly, ESI's motion to dismiss HMC's antitrust claims will be denied.

## 2. ERISA claims (Counts III-IV)

HMC asserts claims as an ERISA beneficiary for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) and for injunctive relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). (FAC at ¶¶ 141-167) In relevant part, ERISA allows a plan participant or beneficiary to file a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." § 1132(a)(1)(B). An insured may seek an injunction or other appropriate equitable relief to enforce ERISA or the plan's provisions. See § 1132(a)(3).

ESI argues these claims should be dismissed because HMC fails to allege any terms of any ERISA plans requiring approval of payment for compound medications, citing Midwest Special Surgery, P.C. v. Anthem Ins. Co., 2010 WL 716105 (E.D. Mo. Feb. 24, 2010). (Doc. No. 130 at 16-18) ESI further argues that even if the health plans are ERISA plans, HMC does not

have standing to assert an ERISA claim because it is neither a "participant" nor a "beneficiary" under any ERISA plan at issue, citing <u>Pascock Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan</u>, 388 F.3d 393, 400 (3d Cir. 2004); <u>Dallas Cnty. Hosp. Dist. v. Assocs. Health & Welfare Plan</u>, 293 F.3d 282, 289 (5th Cir. 2002). (<u>Id</u>. at 20) Finally, ESI argues it is not a named plan administrator and thus not a proper ERISA defendant. (<u>Id</u>. at 18 n.7)

HMC responds that its claims are based on ESI's violation of ERISA claim procedures and thus does not require citation to specific plan provisions. (Doc. No. 142 at 18-20) To state a claim for violation of ERISA claim procedures, a beneficiary need only plead facts showing an ERISA administrator denied benefits in violation of the procedures set forth in § 1133 and 29 C.F.R. 2560.501(1)(g) governing notification of an adverse benefit determination. (<u>Id</u>. at 18) In addition, HMC asserts it has standing as an ERISA "beneficiary" because its patients, who are ERISA Plan participants, or the ERISA Plans themselves, designated HMC to receive benefits under the ERISA plans. (Doc. No. 142 at 21)

To establish the application of ERISA claim procedures, HMC alleges ESI "administers and manages the prescription drug benefit components" of various "employer and employee-organization sponsored plans that provide participants with medical benefits" and "group health plans." HMC alleges on information and belief that these plans are Employee Welfare Benefit Plans under ERISA and/or are covered by ERISA claims procedures under the Affordable Care Act, 42 U.S.C. § 300gg-19(a)(2)(A) ("the ERISA plans"). (FAC at ¶ 142) HMC further alleges, on information and belief, that it was and is an ERISA "beneficiary" because it has the right to directly receive the benefits of its patients who are participants in the ERISA plans pursuant to the terms of those plans. (<u>Id</u>. at ¶ 143) Lastly, HMC alleges, on information and belief, that ESI was the plan and/or claims administrator for the prescription drug components of the ERISA

Plans, either because the plan documents designated ESI as such or because ESI in fact exercised its discretion in adjudicating individual claims for prescription drug benefits under the ERISA Plans. (Id. at ¶ 147)

Allegations made "upon information and belief" may state a claim after Iqbal and Twombly; however, the claim must still be based on factual content that makes liability plausible. See Klohs v. Wells Fargo Bank, N.A., 901 F. Supp. 2d 1253, 1259 n. 2 (D. Haw. 2012). Here, HMC fails to state any factual allegations which would clarify the grounds on which its ERISA claims are based. HMC has not identified any ERISA plan(s) or plan term(s) entitling it to payment for compound medications. See Midwest Special Surgery, P.C. v. Anthem Ins. Cos., 2010 WL 716105, at *3 (E.D. Mo. Feb. 24, 2010), where the court found plaintiff failed to allege a specific plan term conferring a benefit when the complaint sought general "reimbursement for medical services provided to Defendants' plan participants under numerous health plans which qualify as employee welfare benefit plans as defined by ERISA." Id. at *2.

Further, HMC has not alleged sufficient facts regarding an assignment of benefits from either the participants or the applicable ERISA Plans to create derivative standing. HMC alleges ESI reimbursed it directly for the prescriptions it filled for patients who were ERISA Plan participants (see FAC at ¶ 144), and contends this direct payment was only possible because either the participants or the applicable ERISA Plans designated it to receive such payments in place of the plan participants themselves. (Doc. No. 142 at 21) Cf. In re Wellpoint, Inc. Out-Of-Network "UCR" Rates Litig., 865 F. Supp. 2d 1002, 1042 (C.D. Cal. 2011) (where the court found provider plaintiffs had ERISA standing based on allegations that "[t]o facilitate direct payments from insurers, Dr. Henry's patients sign a form assigning their health benefits to him before treatment[,]" and that "Dr. Peck … obtained assignments from his patients, through which

he was paid directly by WellPoint for Providing Healthcare to its insureds.") (internal quotation marks omitted).

Because HMC fails to state any factual allegations which would clarify the grounds on which its ERISA claims are based, these claims will be dismissed without prejudice.

### 3. New York Deceptive Trade Practices Act (Count V)

New York's General Business Law § 349 is a consumer protection statute making deceptive acts or practices in the conduct of business unlawful. To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material way; and (3) the plaintiff was injured as a result. Pelman ex rel. Pelman v. McDonald's Corp., 396 F. Supp. 2d 439, 444 (S.D.N.Y. 2005) (internal citations omitted). Further, where there is a simultaneous claim for breach of contract, a plaintiff must plead losses "independent of the loss caused by the alleged breach of contract." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).

ESI argues this claim must be dismissed because HMC does not plead materially misleading conduct or significant public harm. (Doc. No. 130 at 21-24) After drawing all reasonable inferences in HMC's favor, the Court finds HMC has presented a sufficient factual basis to state a claim for violation of GBL § 349.

First, HMC sufficiently alleges the act or practice was consumer-oriented. HMC alleges ESI and its co-conspirators contacted patients directly by letter to inform them that their compound medicines would no longer be covered by their prescription benefit policies and included misleading statements about those medications in those letters, namely that such medications were not FDA-approved for a specific condition. (FAC at ¶¶ 70-71, 73-78) Second, HMC sufficiently alleges this action was misleading in a material respect in that ESI misled

patients and doctors into believing that compound drugs are unsafe and not medically necessary or appropriate treatments, while omitting the fact that compound drugs are specifically exempt from the FDA approval process and appropriate when prescribed a doctor. (Id.) Finally, HMC alleges it has suffered injury including, "inter alia, payments for prescription drugs that should be covered under patients' health insurance policies and/or plans." (Id. at ¶ 174) HMC has also pled ESI's violation of § GBL 349 "deprived patients – including New York residents/consumers – of access to medically necessary compound medications," a loss independent of the loss caused by the alleged breach of contract. Accordingly, ESI's motion to dismiss this claim will be denied.

### 4. New Jersey "Any Willing Provider" Laws (Count VI)

Generally, any willing provider ("AWP") laws provide a legal recourse to excluded providers and provide people with more selection and freedom to choose their health provider. Am. Drug Stores, Inc. v. Harvard Pilgrim Health Care, Inc., 973 F. Supp. 60, 62 (D. Mass. 1997) (citing William J. Bahr, Comment, Although Offering More Freedom to Choose, "Any Willing Provider" Legislation is the Wrong Choice, 45 U. Kan. L. Rev. 557, 570 (1997)).

In 1994, New Jersey enacted an AWP law which provides that a pharmacy cannot be excluded from an HMO if it "accepts the terms" of the HMO. "[N]o pharmacy or pharmacist shall be denied the right to participate as a preferred provider or as a contracting provider under the same terms and conditions currently applicable to all other preferred or contracting providers . . . provided the pharmacy or pharmacist is registered . . . and accepts the terms and conditions of the policy." See N.J.S.A. §§ 17B:26-2.1i, 17B:27-46.1i.

HMC alleges ESI's improper termination of HMC from its networks without cause, and the provisions of the Agreement providing for such termination without cause, violate New

Jersey's AWP law. (FAC at ¶¶ 178, 183) ESI argues this claim should be dismissed because the law does not give rise to a private right of action. (Doc. No. 130 at 24-26)

The precedent concerning AWP laws is limited. However, in <u>Trilogy Health Care, LLC v. Medco Health Solutions, Inc.</u>, 2013 WL 4832708, at *2 (D.N.J. Sept. 10, 2013), the court was not persuaded by a pharmacy's argument that a pharmacy benefits manager's discretion to terminate it under a Provider Agreement was limited by AWP laws in the various states in which the pharmacy was licensed. The court in <u>Trilogy</u> went on to find the pharmacy had not offered "even a colorable argument" that a particular AWP statute gives rise to a private right of action against a PBM rather than an insurer. <u>Id</u>. Accordingly, the Court will dismiss this claim.

### 5. Breach of contract (Count VII)

To state a claim for breach of contract, a plaintiff must plead the traditional elements of formation, performance, breach and damages. <u>See</u> <u>Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.</u>, 789 F. Supp. 2d 1148, 1155 (D. Minn. 2011). Here, HMC alleges ESI breached the Provider Agreement by terminating it without cause and failing to provide it with proper notice or opportunity to cure pursuant to Appendix A of the Provider Manual. (FAC at ¶¶ 186-189) HMC further alleges that as a result of ESI's termination without cause, proper notice or opportunity to cure, HMC has suffered damages, including "lost revenue and net profits from the substantial decrease in reimbursements for compound prescription medications covered by health insurance policies and/or plans, the inability to locate alternative revenue sources to replace (or partially replace) the substantial revenue lost from ESI's improper termination of the Agreement, and inability to recover reimbursements for thousands of prescriptions already filled and submitted to [ ] ESI." (<u>Id</u>. at ¶ 190)

ESI argues this claim should be dismissed because it rests on a provision of the Provider Agreement not at issue in this dispute. Specifically, HMC is taking the position that ESI breached a provision of the Provider Agreement, which, according to HMC's allegations, does not apply to ESI's termination of HMC because the Agreement allows for termination without cause on 30 days' notice, which ESI provided. (Doc. No. 130 at 27; Doc. No. 146 at 15) The Court is not reviewing the merits of the claim at this stage of the proceedings. These are matters to be determined by the evidence. The Court finds Count VII is sufficiently pled.

### 6. Breach of the implied covenant of good faith and fair dealing (Count VIII)

Related to the breach of contract claim is the claim that ESI breached the implied covenants of good faith and fair dealing. (See FAC at ¶ 193) ESI argues this claim must be dismissed because like the claim for breach of contract, HMC fails to identify an operative provision in the Provider Agreement. (Doc. No. 130 at 28-29) Again, the Court is not reviewing the merits of the claim at this stage of the proceedings. The Court finds Count VIII is sufficiently pled.

### 7. Tortious interference with a business expectancy (Count IX)

To state a claim for tortious interference with a business expectancy under Missouri law, the following elements must be pled and proved: "(1) a contract or valid business expectancy, (2) defendant's knowledge of the contract or relationship, (3) an intentional interference by the defendant inducing or causing a breach of the contract or relationship, (4) absence of justification and (5) damages." Wash Solutions, Inc. v. PDQ Manuf., Inc., 395 F.3d 888, 895 (8th Cir. 2005) (citing Serv. Vending Co. v. Wal–Mart Stores, Inc., 93 S.W.3d 764, 769 (Mo. Ct. App. 2002)).[5] "In general, conduct lacks justification when a defendant has employed 'improper means' to

_____

[5] ESI concedes "the requisite elements" of a tortious interference claim are "substantively identical" under Missouri, New York, and New Jersey Law (See Doc. No. 30 at 29, n.12). HMC does not waive its right to later move for application of New York or New Jersey law. (See Doc. No. 142 at 31 n. 24)

further the defendant's interests to the detriment of the plaintiff." Ozark Emp't Specialists, Inc. v. Beeman, 80 S.W.3d 882, 896 (Mo. Ct. App. 2002) (citation omitted). Improper means are those that are independently wrongful, such as threats, misrepresentation of fact, restraint of trade, "or any other wrongful act recognized by statute or the common law." Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009) (citing Nazeri v. Missouri Valley College, 860 S.W.2d 303, 317 (Mo. 1993)). Conversely, no liability arises if the defendant had an unqualified legal right to do the act complained of. Id.

HMC alleges ESI intentionally interfered with its business expectancy in the "continued sale of compound medications to patients in the Eastern United States," by, inter alia, coercing physicians to stop prescribing compound medicines, attempting to induce patients to cease purchasing compound medicines, and precluding HMC from filling prescriptions for its patients covered by insurance. (FAC at ¶¶ 198 (a)-(f), 199) As a result, HMC alleges it has suffered and will continue to suffer significant damages, including lost revenue and profits caused by the decrease in reimbursements for compound medications covered by health insurance policies and/or plans. (Id. at ¶ 201) ESI moves to dismiss this count on the grounds that HMC has not sufficiently alleged facts regarding its business expectancy or ESI's "improper means." (Doc. No. 130 at 29-30)

To prevail on a tortious interference with business expectancy claim, the business expectancy must be valid or reasonable and cannot be too indefinite or remote. Ozark, 80 S.W.3d at 893 (citing Bell v. May Dep't Stores Co., 6 S.W.3d 871, 876 (Mo. banc 1999)). Here, HMC alleges a business expectancy in the continued sale of compound medications to patients in the Eastern United States, including but not limited to, New York and New Jersey. (FAC at ¶ 196; see also id. at ¶¶ 10-12, 23-33 (describing HMC's business and sale of compounded medications

to patients)). HMC also alleges ESI used improper means, specifically, threats, misleading letters, and improper termination of HMC, to interfere with its expectancy, resulting in a substantial decrease in revenues and net profits. (FAC at ¶¶ 115-116, 201) The Court finds this count is sufficiently pled.

### 8. Declaratory judgment (Count X)

HMC seeks a judgment declaring that any termination without cause provisions contained in the Provider Agreement between HMC and ESI are severable from the remainder of the Agreement and void as unconscionable with respect to HMC's termination. (FAC at ¶ 208) ESI argues there is no contract in existence because the Provider Agreement was terminated and thus no controversy ripe for determination. (Doc. No. 130 at 31-32) HMC responds that the validity of the without cause provisions is ripe because ESI has announced its intention to rely on them to limit HMC's damages to the 30-day notice period contained therein. (Doc. No. 142 at 33-34) In reply, ESI argues HMC's argument demonstrates it has an adequate remedy at law. (Doc. No. 146 at 18)

The Declaratory Judgment Act provides that any federal court, "[i]n a case of actual controversy within its jurisdiction ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" refers to the type of "cases" and "controversies" justiciable under Article III. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126 (2007). Courts have acknowledged the difficulty in setting out a precise test for determining whether there is such a controversy. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment." <u>Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.</u>, 687 F.3d 1076, 1081 (8th Cir. 2012) (citing <u>Maryland Cas. Co. v. Pac. Coal & Oil Co.</u>, 312 U.S. 270, 273, (1941)).

Courts have considerable discretion in determining whether or not a declaratory judgment action should be entertained. <u>Medimmune</u>, 549 U.S. at 136. If a petition for declaratory relief contains facts supporting its allegations and those facts demonstrate a justiciable controversy, the petition is sufficient and cannot be dismissed. Clearly, HMC is a party whose rights are affected by an Agreement which sets out, among other things, the terms for claims reimbursement – the sole foundation of the parties' business relationship. As such, HMC is entitled to a declaration of those rights under that Agreement, whether ESI's attempt to terminate it was valid and effectual or not. The legal consequences and rights ensuing from the termination, if valid, or the attempt to terminate it, if invalid, must be determined, and may be declared. <u>See</u> <u>Hyatt Int'l Corp. v. Coco</u>, 302 F.3d 707, 712 (7th Cir. 2002) (relevant Article III considerations include whether the contractual dispute is real, in the sense that it is not factually hypothetical; whether it can be immediately resolved by a judicial declaration of the parties' contractual rights and duties; and whether "the declaration of rights is a bona fide necessity for the natural defendant/declaratory judgment plaintiff to carry on with its business.").

### 9. Injunctive relief (Count XI)

Lastly, ESI argues that dismissal of HMC's substantive counts renders its claim for preliminary and permanent injunctive relief moot. (Doc. No. 130 at 32-33) Because the majority of HMC's alleged claims are sufficient to withstand a motion to dismiss, ESI's motion to dismiss HMC's injunctive relief claim will be denied.

### Conclusion

In sum, HMC's complaint satisfies the requirements of Rule 12(b)(6) with respect to Counts I and II (antitrust claims), Count V (deceptive trade practices), Count VII (breach of contract), Count VIII (breach of the implied covenant of good faith and fair dealing), Count IX (tortious interference with a business expectancy), Count X (declaratory relief), and Count XI (injunctive relief). The complaint fails to allege claims under Counts III and IV (ERISA claims) and those counts will, therefore, be dismissed without prejudice. Count VI (violation of AWP law) will be dismissed on the grounds that the statute does not give rise to a private right of action against a PBM.

**B. Motion to dissolve TRO**

ESI moves for an order dissolving the Federal TRO as it relates to HMC. As discussed above, the State Court TRO entered on September 11, 2014 ordered ESI to "reinstate in full force and effect nunc pro tunc" "the Network Pharmacy Agreement dated September 5, 2012, entered into by and between HMC and Wholesale Alliance TPS, LLC d/b/a/ Third Party Station on behalf of Third Party Payer ESI" (see Doc. No. 23-2 at 4 ¶ (e)), and enjoined ESI from, among other things, "refusing to process and pay claims for payment submitted by HMC for compounded medications prescribed by physicians for their patients who have prescription drug benefits administered by [ESI]." (Id. at 3 ¶ (b)) Following removal to the New York District Court, the parties consented to extend the State Court TRO until a determination of pending motions to transfer venue.

On October 3, 2014, the New York District Court vacated the State Court TRO and entered the Federal Court TRO enjoining Express Scripts from "refusing to process and/or pay claims submitted by [HMC] for the payment of prescriptions dated on or after September 11, 2014, or for the refill of an existing refillable prescription after September 11, 2014, for

compounded medications prescribed by licensed physicians for their patients, which had heretofore been covered by their insurance." (Doc. No. 70 at 3 ¶ (b)) The District Court further ordered upon agreement of the parties that the TRO remain in full force and effect until a hearing on the preliminary injunction. (Id. at 4) On October 27, 2014, the transferring court instructed that, with respect to ESI, "[a]ny requests to revisit the terms [of the Federal TRO] should be directed to the … federal district court in Missouri."

In support of its motion to dissolve, ESI argues the Federal TRO has extended beyond the 14 days prescribed in Rule 65(b)(2) and must, therefore, be treated as a preliminary injunction. (Doc. No. 154 at 2) ESI further argues HMC cannot meet its burden of showing that continued injunctive relief is warranted, noting that HMC has assigned a specific dollar amount to each reimbursement claim it contends ESI has denied. Because these damages can be remedied if HMC prevails on the merits of its breach of contract claim, HMC has an adequate remedy at law and cannot demonstrate irreparable harm. (Id. at 5-6)

The TRO, by its express terms and by agreement of the parties, is to remain in full force and effect until a hearing on the preliminary injunction, a situation clearly contemplated by Rule 65. See Rule 65(b)(2) ("The order expires at the time after entry – not to exceed 14 days – that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension."). Moreover, a hearing on a motion to dissolve a TRO "cannot be considered to be a hearing on a preliminary injunction," where neither the parties nor the court "treated the … hearing as a hearing on an application for a preliminary injunction," the plaintiffs "made no attempt at that time to present their case for a preliminary injunction[,]" and "[t]he court itself did not indicate that it was undertaking a hearing on a preliminary injunction." Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers

Local No. 70, 415 U.S. 423, 442 (1974). Finding no changed circumstances, the motion to dissolve the TRO will be denied.

### C. Motion for temporary stay of discovery and protective order

ESI moved for an order staying all discovery in this action pending the Court's ruling on its motion to dismiss and for protective order precluding HMC's Rule 30(b)(6) deposition in its entirety. The Court resolved this motion in its ruling on HMC's motion to compel Rule 30(b)(6) deposition. HMC served a Rule 30(b)(6) notice of deposition on ESI calling for the production of a corporate representative to testify regarding ESI's compliance with the TRO issued by the New York District Court. (Doc. No. 149) The Court granted HMC's motion to compel in part and directed HMC to clarify the topics to be covered in the deposition. (Doc. No. 168) The Court also deferred entering a scheduling order in this case, effectively staying discovery. (Id.) Only after a scheduling order has been entered by this Court may discovery proceed. See Fed.R.Civ.P. 26(d). Accordingly, ESI's motion for temporary stay of discovery and protective order will be denied as moot.

### D. Motion for civil contempt

HMC's motion for contempt is based on an alleged violation of the Federal TRO, specifically paragraph (b), which enjoins ESI:

> From refusing to process and/or pay claims submitted by … HMC for the payment of prescriptions dated on or after September 11, 2014, or for the refill of an existing refillable prescription after September 11, 2014, for compounded medications prescribed by licensed physicians for their patients, which had heretofore been covered by their insurance.

(Doc. No. 70 at ¶ (b)) HMC argues that since the entry of the TRO, ESI has refused to process and/or pay a single claim submitted by the New Jersey Pharmacy on or after September 11, 2014 – a direct violation of the TRO. (Doc. No. 169 at ¶¶ 4-5) In response, ESI argues it has paid all

valid claims submitted through HMC's in-network pharmacy, i.e., claims submitted to ESI pursuant to the terms of the contract between its affiliate Medco Health Solutions and HMC's Brooklyn, New York pharmacy. (Doc. No. 174 at 11-12)

"The party moving for contempt sanctions bears the burden of proving facts warranting a civil contempt order by clear and convincing evidence." <u>Chicago Truck Drivers v. Bhd. Labor Leasing</u>, 207 F.3d 500, 504 (8th Cir. 2000). That burden is met if the party is able to demonstrate: "(1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order." <u>Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries</u>, 177 F.3d 380, 382 (5th Cir. 1999). "A contempt order must be based on a party's failure to comply with a 'clear and specific' underlying order." <u>Chaganti & Assocs., P.C. v. Nowotny</u>, 470 F.3d 1215, 1223 (8th Cir. 2006) (quoting <u>Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.</u>, 293 F.3d 409, 418 (8th Cir. 2002)). However, "[i]f the acts done are clearly in contravention of the court's decree, the intention is of no consequence. The absence of willfulness does not relieve an individual from civil contempt[.]" <u>N.L.R.B. v. Ralph Printing & Lithographing Co.</u>, 433 F.2d 1058, 1062 (8th Cir. 1970).

The parties have widely disparate views of what the New York District Court meant when it enjoined ESI from refusing to process and/or pay claims submitted by HMC for compounded medications if those claims were covered by a patient's insurance prior to September 11, 2014. ESI contends it terminated its contract with HMC effective September 1, 2014, and was not required to reinstate that contract in order to maintain the status quo. (Doc. No. 174 at 1-2) HMC argues the plain terms of the Federal TRO require ESI to reimburse claims submitted by HMC irrespective of the existence of a contract. (Doc. No. 171 at 7) Both in

briefing and at the hearing, there was much discussion about off the record conversations with the New York District Court judge seeking clarification of the TRO as it applied to ESI.

Given the lack of clarity around the intent of the Federal TRO, the Court cannot conclude there was a clear violation of the order sufficient to warrant a finding of contempt. See Imageware, Inc. v. U.S. W. Commc'ns, 219 F.3d 793, 797 (8th Cir. 2000) ("No one should be held in contempt for violating an ambiguous order . . . A contempt should be clear and certain."); Chicago Truck Drivers v. Bhd. Labor Leasing, 207 F.3d 500, 504 (8th Cir.2000) ("The party moving for contempt sanctions bears the burden of proving facts warranting a civil contempt order by clear and convincing evidence."). Based on the facts presented and under the law, HMC's motion for contempt will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Express Scripts' Motion to Dismiss Plaintiffs' First Amended Complaint [129] is **GRANTED** in part. Counts III, IV and VI are dismissed. In all other respects the motion is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Express Scripts' Motion to Dissolve the Temporary Restraining Order [153] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Express Scripts' Motion for Temporary Stay of Discovery and Protective Order [157] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Civil Contempt [169] is **DENIED**.

**IT IS FURTHER ORDERED** that a Rule 16 conference will be set by separate order.

Dated this 9th day of July, 2015.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE