UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HM COMPOUNDING SERVICES, LLC, and HMX SERVICES, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:14-CV-01858 JAR ) |
| EXPRESS SCRIPTS, INC., | ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Express Script ("ESI")'s Motion for Partial Summary Judgment (Doc. No. 192) and Plaintiffs HM Compounding Services, LLC and HMX Services, LLC (collectively "HMC")'s Motion to Strike Portions of John Gavin's Declaration Submitted by Defendant (Doc. No. 312). The motions are fully briefed and ready for disposition. Oral argument on Defendant's motion was held on November 18, 2016.

**I.  Procedural background**

Plaintiff HM Compounding Services, LLC, is an independent compounding pharmacy that provides customized medications to patients. Plaintiff HMX Services, LLC, is HM Compounding Services, LLC's New Jersey affiliated pharmacy. ESI is a pharmacy benefit manager ("PBM"). PBMs administer the prescription pharmaceutical portion of health care benefit programs, which are typically purchased by a plan sponsor. HMC was a member of ESI's pharmacy provider network pursuant to a Pharmacy Provider Agreement ("Provider Agreement") and Network Provider Manual ("Provider Manual") (collectively the "Agreement").

As a condition for membership in ESI's pharmacy network, compounding pharmacies are required to undergo a credentialing/recredentialing process. In May 2014, HMC underwent a recredentialing process. On July 31, 2014, ESI informed HMC by letter that the Agreement would terminate effective September 1, 2014. The stated reason for HMC's termination was that during the credentialing process, it misrepresented that it never waived or reduced member copayments. On August 4 and 5, 2014, HMC responded in writing to ESI, questioning the factual basis of its termination and requesting an appeal hearing; ESI did not reverse its decision after receiving HMC's letters.

HMC brought this action on September 10, 2014 in the Supreme Court of the State of New York, County of Nassau, seeking to enjoin the termination. On September 12, 2014, ESI removed the case to the United States District Court for the Eastern District of New York. On October 27, 2014, the New York District Court severed HMC's claims against ESI and transferred them to this Court. On December 1, 2014, HMC filed its First Amended Complaint ("FAC") asserting various statutory and common law claims against ESI (Doc. No. 126). ESI moved to dismiss the FAC for failure to state a claim (Doc. No. 129) and, on July 9, 2015, the Court granted ESI's motion in part and dismissed HMC's claims under ERISA and New Jersey's Any Willing Provider Laws (Counts III, IV and VI); in all other respects ESI's motion was denied (Doc. No. 183).

On August 18, 2015, ESI moved for partial summary judgment on the grounds that HMC's remaining claims[1] fail as a matter of law based on HMC's breaches of the parties'

---

[1] The remaining claims are: violation of the Sherman Act, 15 U.S.C. § 1 (Count I); violation of the Donnelly Act, N.Y. Gen. Bus. L. § 340.1 (Count II); Deceptive Trade Practices: violation of New York General Business Law § 349 (Count V); breach of contract (Count VII); breach of the implied covenant of good faith and fair dealing (Count VIII); declaratory judgment (Count X); and injunctive relief (Count XI). ESI is not moving on HMC's claim for tortious interference with a business expectancy (Count IX), which it contends lacks factual support (see Doc. No. 194 at 1 n.1).

Agreement and ESI's resulting right to immediately terminate that Agreement. In response, HMC argues there are factual disputes about the materiality of its alleged breach(es). HMC further argues that ESI breached the Agreement by failing to comply with the 30-day "cure" period under Section 4.2.b of the Agreement; the notice and appeal requirements of the Provider Manual addendum; or with the Disciplinary Action provision of the Provider Manual.

The Court stayed briefing on ESI's motion and granted the parties 90 days to conduct phased discovery on the issues raised in the motion (Doc. No. 208). On November 18, 2015, HMC's counsel moved to withdraw and requested the Court stay discovery and all pending deadlines for 60 days to allow HMC to retain new counsel (Doc. No. 211). The Court granted counsel's motion to withdraw and stayed discovery and all pending deadlines for 30 days, up to and including December 18, 2015 (Doc. No. 215). New counsel filed notices of appearance on behalf of HMC on December 3, 2015 and requested the Court lift the stay of discovery. The Court granted HMC's request on December 8, 2015 (Doc. No. 224) and subsequently extended the initial discovery deadline until February 26, 2016, and the stay on briefing ESI's pending motion for partial summary judgment until March 28, 2016 (Doc. No. 227).

On February 12, 2016, HMC filed a motion to compel ESI to produce certain documents (Doc. No. 235). HMC filed a motion for relief pursuant to Rule 56(d) on March 3, 2016, asking the Court to deny ESI's motion for partial summary judgment as premature and expand discovery to include third party discovery on all of HMC's claims. Alternatively, HMC asked the Court to indefinitely stay briefing on ESI's partial summary judgment motion so the parties could continue to conduct discovery (Doc. No. 259). Following a status conference with counsel on March 24, 2016, the Court ordered HMC to submit a proposed plan for completion of discovery by March 30, 2016 (Doc. No. 274). After consideration of HMC's discovery plan, the

Court granted HMC's motion to compel in part and extended the discovery deadline for 30 days, up to and including June 6, 2016 (Doc. No. 285). Per the Court's order, HMC was required to respond to ESI's motion for partial summary judgment by July 6, 2016 (id.). On HMC's motion, the deadline for discovery was extended to July 6, 2016, and the deadline to respond to ESI's motion was extended to July 25, 2016 (Doc. No. 287), and then to August 1, 2016 (Doc. No. 291). ESI was granted until September 29, 2016, to reply (Doc. No. 309).

**II.     Legal standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the Court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988).

**III.    Motion to Strike Gavin Declaration**

In support of its summary judgment motion, ESI submits the declaration of John Gavin, its Senior Manager of Investigations in Fraud, Waste and Abuse Services (Declaration of John Gavin ("Gavin Decl."), Doc. No. 196). HMC moves to strike portions of Gavin's declaration as

containing inadmissible hearsay, legal conclusions, and improper opinion testimony. Prior to addressing the merits of ESI's motion for partial summary judgment, the Court examines briefly the motion to strike.

Affidavits in support of summary judgment must be made on personal knowledge and contain admissible evidence. Fed. R. Civ. P. 56(c)(4). When an affidavit contains a statement made without personal knowledge, consisting of hearsay, or purporting to state legal conclusions as fact, the statement may not be used to support or defeat a motion for summary judgment. See Jenkins v. Winter, 540 F.3d. 742, 748 (8th Cir. 2008); Brooks v. Tri–Systems, Inc., 425 F.3d. 1109, 1111 (8th Cir. 2005); Howard v. Columbia Public School District, 363 F.3d. 797, 801 (8th Cir. 2004) (citing Shaver v. Independent Stave Co., 350 F.3d. 716, 723 (8th Cir. 2003)); Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d. 1361, 1367 (8th Cir. 1983).

The Court is presumed to consider only evidence found to be properly admissible. See Wise v. Bowersox, 136 F.3d 1197, 1203 (8th Cir. 1998) (quoting Walton v. Arizona, 497 U.S. 639, 653 (1990), *overruled on other grounds,* Ring v. Arizona, 536 U.S. 584, 609 (2002) ("[t]rial judges are presumed to know the law and to apply it in making their decisions."); see also United States v. Saddler, 538 F.3d 879, 890 (8th Cir. 2008). Moreover, a motion for summary judgment will not fail merely because some of the statements contained in the affidavit may be inadmissible. Gore v. GTE South, Inc., 917 F. Supp. 1564, 1570 n. 5 (M.D. Ala. 1996). A court may look to the remaining portions of the affidavit to see if there is a basis to support the summary judgment. Id. The Court has carefully reviewed Gavin's declaration, and considered only those statements that would be admissible at trial in its analysis of the parties' legal arguments. Accordingly, HMC's motion to strike will be granted in part and denied in part.

## IV. Facts[2]

The following facts are undisputed or uncontroverted, except where indicated, and set forth in the light most favorable to HMC:

As part of a re-credentialing process, HMC submitted an updated Provider Certification questionnaire to ESI on May 23, 2014, certifying that each answer given was "true and correct"; agreeing to notify ESI if a change in the information provided would make any part of the Provider Certification "untrue or inaccurate"; and agreeing that failure to provide true and accurate information would be a breach of the Provider Agreement that could lead to immediate termination. (Defendant's Statement of Uncontroverted Material Facts ("SOF"), Doc. No. 195 at ¶¶ 7, 9-11)[3] In particular, Question 29 of the Provider Certification asked: "Do you or your pharmacy(ies) ever waive or offer a reduction of member copayments? If Yes, please provide a copy of your written policy relating to the waiver/reduction of copayments." HMC answered "no." (SOF at ¶ 13).

Based on the responses provided by HMC, ESI identified HMC for investigative review.[4] In May 2014, members of ESI's Fraud, Waste, and Abuse team sent letters to a small subset of ESI members asking for verification that they had received a prescription from HMC and paid

---

[2] The Court notes that the parties have alleged a substantial number of statements of undisputed material facts, with each side purporting to dispute a considerable number of the other's facts. The Court has reviewed the statements, the responses, and the supporting documentation, and, where appropriate, will accept facts as supported by appropriate admissible evidence.

[3] HMC disputes the legitimacy of the certification questionnaire and argues the recredentialing was done in bad faith and for an anti-competitive purpose (Plaintiffs' Response to Defendants' SOF, Doc. No. 303 at ¶¶ 8-13).

[4] Section 6 of the Provider Manual, entitled Network Provider Quality Assurance Reviews, Audits and Investigations, provides that all claims are subject to audit and that ESI reserves the right to review (i.e. audit) any claim. In addition, ESI may conduct an investigation of any claim(s) suspected of fraud, waste or abuse.

a copayment. In response, one ESI member stated she had a prescription filled at HM New Jersey in April 2014 but that "there was no co-pay" (SOF at ¶ 14); another ESI member stated she "was told the medicine was approved … no copay" (id. at ¶ 15).[5]

In June 2014, ESI requested proof of copayment collection from HMC for 21 prescriptions dispensed between February and April of 2014 (SOF at ¶ 16); in July 2014, ESI requested proof of copayment collection for an additional 56 prescriptions dispensed by HMC during the same time period (id. at ¶ 18). It is undisputed that HMC provided no evidence that a copayment was collected for any of the requested prescriptions (id. at ¶¶ 17, 19).[6] Based on this information, ESI notified HMC that it was being terminated for cause for misrepresenting that it did not waive or discount copayments.

According to HMC's Chief Marketing Officer, it was HMC's (unwritten) policy to *charge* the appropriate copayment according to the member's plan and use its "best efforts" to collect copayments (Deposition of Spencer Malkin ("Malkin Depo."), Doc. No. 330-1 at 307:12-308:5). More specifically, when HMC dispensed prescriptions by home delivery or mail, an invoice was sent with the prescription and an account receivable was created. Even if a member was in arrears, HMC continued to fill prescriptions (id. at 308:22-309:21; 310:3-7). If a copayment was not paid, its policy was to send the patient up to three collection letters. HMC

---

[5] HMC objects to these member statements as hearsay (Plaintiffs' Response to Defendants' SOF, Doc. No. 303 at ¶¶ 14, 15). ESI replies that the statements are not hearsay because they are not offered for their truth, but for the fact of receipt, which is the event that triggers its termination right under the Agreement. "A statement offered to show its effect on the listener is not hearsay." United States v. Wright, 739 F.3d 1160, 1170-71 (8th Cir. 2014) (citing cases). Section 2.2 of the Agreement gives ESI the discretion to terminate under these circumstances: "If [ESI] becomes aware of any Copayment or cost-sharing discounts offered by [HMC] – either through audit, investigation, Member statements, or review of Network Provider's website or other advertising materials – [HMC] may be subject to immediate termination."

[6] HMC admitted it did not collect a single copayment for any of the claims identified by ESI, which it valued in excess of $600,000 (Malkin Depo. at 330:11-331:2; 332:6-13; Plaintiffs' Response to Defendants' SOF, Doc. No. 303 at ¶¶ 17, 19).

also had an informal practice of occasionally calling members about specific copayments. If these attempts to collect were unsuccessful, then HMC referred past due amounts to an outside collection agency (id. at 310:12-19; 310:24-311:22). HMC acknowledges its success rate in collections was "poor" - less than 20 percent of the copayments it billed were actually collected (id. at 313:12-22).

V. **Relevant contractual provisions**[7]

Section 2.4 of the Provider Agreement concerns collection of copayments. Section 2.4.a provides that HMC

> **shall collect** from members the lesser of the Usual and Customary Retail Copayment when indicated by ESI, through its online processing system or if online processing is unavailable, in accordance with the Provider Manual. **Copayments may not be waived or discounted** and, unless directed by ESI in writing, [HMC] shall not collect any greater amount or any other taxes, fees, surcharges or compensation from any Member for any Covered Medications or services provided in connection therewith. **In no event will ESI be liable for any Copayment**." (Emphasis added).

With regard to collection of co-payments, both the January and July 2014 Provider Manuals state that "[HMC] **may not institute Member copayment discount programs or otherwise alter a Member Copayment**, unless such waiver or discount is required by law. If

---

[7] HMC disputes the operative contractual materials relied upon by ESI. (Plaintiffs' Response to Defendants' SOF, Doc. No. 303 at ¶ 2; Doc. No. 301 at 6-15). HMC asserts the Agreement submitted by ESI is incomplete (missing a related document titled "PSAO Services Agreement" dating from October 2013, as well as various schedules, signature pages and attachments) and not properly executed (no date or signature from ESI). In addition, HMC contends there are material factual disputes concerning which version of the Provider Manual governs the timeline of events. The Court notes, however, that both parties have submitted the same Provider Agreement on the record (see Doc. No. 199-1 (ESI) and Doc. Nos. 304-1, 306-4 (HMC)), and that the Agreement submitted by HMC actually includes the missing PSAO Services Agreement. As for which version of the Provider Manual governs, all relevant provisions of the Manuals concerning collection of copayments, immediate termination, honoring sponsors' plan design, and ESI's right to credential a pharmacy, are substantively identical (Appendix A, "Summary of Provisions at Issue in 2014 Provider Manuals," Doc. No. 328-1). See Watkins Inc. v. Chilkoot Distributing, Inc., 719 F.3d 987, 994 (8th Cir. 2013) (even if a factual dispute persisted as to which agreement controlled the parties' dispute, the district court did not err by analyzing whether a breach occurred under either agreement for purposes of summary judgment).

[ESI] becomes aware of any copayment or cost-sharing discounts being offered by [HMC] – either through audit, investigation, Member statements, or review of [HMC]'s website or other advertising materials – [HMC] may be subject to immediate termination."

Section 4.2.a of the Provider Agreement permits ESI to terminate HMC without cause upon at least thirty (30) days written notice, or longer if required by law. In the event a party defaults in the performance of any of its obligations under the Provider Agreement, under Section 4.2.b, the non-defaulting party may give written notice to the defaulting party of such breach. If the defaulting party has not cured such breach to the reasonable satisfaction of the non-defaulting party within thirty (30) days after receiving such notice, then the non-defaulting party shall have the right to immediately terminate the Agreement upon expiration of the 30-day cure period. Notwithstanding Section 4.2.b, Section 4.2.c provides that ESI shall have the right to immediately terminate the Agreement in the event that:

> [HMC] ceases to be licensed by the appropriate licensing authority; (ii) [HMC] a fraudulent prescription drug claim or any information in support thereof; … (iv) [HMC] routinely fails to designate on its claims submission and/or supporting documents the information required by [ESI] or fails to comply with [ESI's] policies and procedures including, but not limited to, the Provider Manual and/or quality assurance and/or utilization review procedures; (v) **any representation to [ESI] or any response to a question set forth on the Provider Certification is untrue or becomes untrue**; … (vii) [ESI] determines that [HMC] is dispensing Covered Medications in violation of any applicable law, rule and/or regulation; … (x) [HMC] breaches any of its representations and warranties set forth in this Agreement or any other document provided to [ESI]; [or] (xii) [HMC] fails to comply with any audit or investigative request, including the provision of information, made by [ESI] within the time period stated in such request…. (Emphasis added).

Likewise, the Provider Manual gives ESI the right to immediately terminate the Agreement in the event that "(iv) HMC fails to comply with [ESI]'s policies and procedures including, but not limited to, the Provider Manual …; (v) any representation to [ESI] or any response to a question set forth on the Provider Certification is untrue or becomes untrue; … (x)

[HMC] breaches any of its representations and warranties set forth in this Agreement or any other document provided to [ESI] …"

Section 2.9 of the Provider Manual provides that "the Sponsor is ultimately the decision maker regarding coverage of Compound Prescriptions, including specific compound ingredients … Network Providers may not circumvent Sponsor's benefit design and coverage of compounded prescriptions or compound ingredients, including, but not limited to, resubmitting rejected compound prescription ingredients as individual, non-compounded items."

The Provider Manual also includes a New Jersey Addendum which states that "the Provider Agreement is hereby amended, as required by and consistent with law, so that the following rules and requirements are included and shall apply with respect to those services provided to Members … In the event there is a conflict between the terms and conditions set forth in this Addendum and the terms and conditions set forth in the Provider Agreement (including the Provider Manual), the terms and conditions set forth in this Addendum shall control." (Doc. No. 303-5 at 46-52)

Section 6.a. of the Addendum provides that if the Provider Agreement is terminated, "[ESI] shall give [HMC] at least ninety (90) days prior written notice. In the event of termination, [HMC] has the right, within ten (10) days of receipt of notice, to request a hearing. **The foregoing shall not apply when the termination is based on … breach of the Provider Agreement by [HMC]** …" (Emphasis added) (Id. at 48)

Section 6.b. provides that HMC has the following rights upon receipt of the termination notice: "(i) the right to obtain a reason for the termination in writing from [ESI] if the reason is not otherwise stated in the termination notice; (ii) the right to request a hearing, and any exceptions to that right; and (iii) the right to obtain the procedures for exercising either right.

These rights, as applicable to [HMC], shall be as described in N.J.A.C. 11:24-15.2(b)(1), 11:24-3.5." (Id.)[8]

VI.     **Discussion**

ESI argues that its motion ultimately raises one issue, which is dispositive of nearly all of HMC's remaining claims, namely, whether it had a contractual right to terminate HMC from its provider network. ESI has asserted multiple grounds for terminating the Agreement based on HMC's breaches of the Agreement as well as its circumvention of benefit design. ESI further argues that termination consistent with the Agreement breaks the requisite causal link between the alleged antitrust conduct and the injury alleged by HMC.

Under Missouri law, a breach of contract claim requires a plaintiff to allege: (1) a valid and enforceable contract; (2) the rights of the plaintiff and the obligations of the defendant under the contract; (3) breach of the contract by the defendant; and (4) damages. Reitz v. Nationstar Mortg., LLC, 954 F. Supp.2d 870, 884 (E.D. Mo. 2013) (citing cases). "The interpretation of a contract, including whether it is ambiguous, is a question of law." Schnuck Markets, Inc. v. First Data Merch. Servs. Corp., No. 15-3804, 2016 WL 7741741, at *4 (8th Cir. Jan. 13, 2016) (quoting Adbar Co., L.C. v. PCAA Mo., LLC, No. 4:06-CV-1689, 2008 WL 68858, at *4 (E.D. Mo. Jan. 4, 2008)). "When a contract uses plain and unequivocal language, it must be enforced as written." Id. (quoting Deal v. Consumer Programs, Inc., 470 F.3d 1225, 1230 (8th Cir. 2006)). "To determine whether a contract is ambiguous, we consider the instrument as a whole, giving the words contained therein their ordinary meaning. A contract is not ambiguous merely because the parties dispute its meaning." Id. (citations omitted).

---

[8] ESI asserts that the New Jersey addendum only applies to a limited set of circumstances relating to New Jersey specific claims and plans and that in any event, the provisions of Section 6 do "not apply" to a termination based on "breach of the Provider Agreement by Network Provider." (Doc. No. 303-5)

Not every breach of contract provides a party with a cause of action; only material breaches are actionable for damages. Danella Sw., Inc. v. Sw. Bell Tel. Co., 775 F. Supp. 1227, 1239 (E.D. Mo. 1991), *aff'd*, 978 F.2d 1263 (8th Cir. 1992); River Oaks Condo. Ass'n v. Donovan, No. 4:12-CV-01880-SPM, 2013 WL 4666343, at *10 (E.D. Mo. Aug. 30, 2013). The materiality of a particular breach is ordinarily a question of fact, River Oaks Condo. Ass'n v. Donovan, No. 4:12-CV-01880-SPM, 2013 WL 4666343, at *10 (E.D. Mo. Aug. 30, 2013) (citing L.L. Lewis Constr., L.L.C. v. Adrian, 142 S.W.3d 255, 260 (Mo. Ct. App. 2004)), and can be decided as a matter of law only if no reasonable trier of fact could disagree, Transp. Ins. Co. v. Busy Beaver Bldg. Centers, Inc., 969 F. Supp. 2d 875, 890 (S.D. Ohio 2013). ESI's evidence is strong, but not uncontroverted. As discussed below, there are a number of factual disputes as to whether HMC materially breached its Agreement with ESI. Based on the controverted evidence of record, the Court cannot determine as a matter of law whether ESI had a contractual right to terminate HMC from its provider network.

ESI argues it had the right to immediately terminate the Agreement based on its uncontroverted evidence that HMC did not collect copayments. ESI relies on Section 2.4.a of the Agreement, which requires that HMC "shall collect from Members…the applicable copayment" and clearly states that "[c]opayments may not be waived or discounted …" Relying on Alternative Med. & Pharmacy, Inc. v. Express Scripts, Inc., No. 4:14CV1469 CDP, 2016 WL 468647 (E.D. Mo. Feb. 8, 2016), *reconsideration denied by*, No. 4:14CV1469 CDP, 2016 WL 827934 (E.D. Mo. Mar. 3, 2016), a case involving essentially the same contractual language, HMC argues the Agreement cannot be interpreted on summary judgment because the contractual requirements regarding collection of copayments are ambiguous.

In Alternative Medicine, ESI required Omniplus, a compound pharmacy, to complete a certification form which asked, *inter alia*, whether "you or your pharmacy(ies) ever waive or offer a reduction of member copayments," to which Omniplus answered "no." Based on information received from some members who used Omniplus' mail-order delivery service that they had not paid the required copayments, ESI terminated Omniplus from its provider network for misrepresenting that it did not waive or discount copayments. At summary judgment ESI argued, as it argues here, that Omniplus breached their contract when it misrepresented that it did not waive or discount copayments because "failing to collect all copayments amounts to a waiver or discounting of copayments, and that in any event, the Provider Agreement affirmatively requires Omniplus to collect all copayments." Id. at *2. (See Doc. No. 194 at 7; Doc. No. 328 at 7-9) The district court concluded that because the contract did not define what constitutes a "waiver" or "discount" of copayments, the question as to whether Omniplus' "obviously lackluster" collection efforts could amount to a waiver or discount of copayments under the contract was a fact question for a jury, and denied summary judgment. Id. at *5.

HMC argues that because Question 29 of the Provider Certification did not ask whether HMC *collects* all copayments, its answer was based on its reasonable understanding of the question posed. HMC notes that ESI's own published guidance instructs pharmacies to "make every effort to collect" copayments (Plaintiffs' Statement of Additional Material Facts, Doc. No. 303 at 17, ¶ 65), not that pharmacies *must* collect all copayments. HMC also maintains its understanding that its collection policy, which included *charging* all required copays to customers, was fully compliant with ESI's policy that pharmacies should use "best efforts" to collect copayments. HMC argues that the fact it did not *receive* payment for all copayments

charged to customers does not establish grounds for termination. Moreover, the Agreement does not define "waiver" or "discount" of copayments.

At oral argument, ESI attempted to distinguish <u>Alternative Medicine</u> by arguing that in that case, the copayment collection was a matter of degree, whereas here, no copayments were collected at all. This is unsupported by the record. There is no indication that ESI's 2014 investigative review/audit was based on a random sample of prescriptions dispensed by HMC from which the Court could extrapolate a pattern of non-collection by HMC. HMC's copayment collection rate was admittedly "less than 20 percent," but the legal consequence of this is disputed.[9] As in <u>Alternative Medicine</u>, the question as to whether HMC's collection efforts – or lack thereof – constitute a waiver or discount of copayments under the Agreement is a fact question for a jury to decide after consideration of all the evidence.

In further support of its contractual right to terminate the Agreement, ESI identifies a number of other misrepresentations made by HMC on the Provider Certification questionnaire concerning state licensure, the use of non-FDA approved compounds, and the use of pre-printed prescription forms. ESI contends that HMC's answers to these questions were untruthful and a basis for immediate termination. HMC responds that there are multiple reasonable interpretations of these questions that must be resolved by a jury and are not appropriate for summary judgment. The Court agrees that there are factual disputes that require determination by a jury.

Question 24 on the Provider Certification asked: "Do you or your pharmacy(ies) deliver prescriptions to out-of-state customers? If Yes, identify states where you plan to service

---

[9] As in <u>Alternative Medicine</u>, ESI does not explicitly argue that its Providers were required to collect 100% of copayments and that any failure would be grounds for termination. However, Michael Klein, ESI's Director of Special Investigations, testified that in ESI's view, the failure of both compounding and non-compounding pharmacies to collect 100% of copays is a breach of contract (Deposition of Michael Klein ("Klein Depo."), Doc. No. 330-4 at 191:20-192:6; 192:15-21).

customers and provide corresponding out-of-state pharmacy licenses." HMC answered "yes" and listed eight states. Elsewhere in the Provider Certification, HMC was asked whether it shipped prescriptions to other states. HMC responded "Yes" and identified 14 states to which it shipped prescriptions. During discovery, however, HMC admitted shipping to over twenty (20) additional states not listed, as well as to the District of Columbia. The Court cannot conclude as a matter of law that HMC's response was untrue. Question 24 asked only where HMC planned to ship; it did not ask HMC to identify every state where it has ever delivered a prescription, regardless of the circumstances, including whether the state requires a license. Indeed, ESI acknowledges the fact that certain states permit out-of-state pharmacies to ship prescriptions to customers within their borders as an accommodation, so long as it was on a de minimis basis. (Klein Depo. at 70:3-71:12) Whether HMC's response to this question establishes a misrepresentation is open to interpretation and thus a jury question.

Question 28 of the Provider Certification asked**:** "Do you or your pharmacy(ies) compound investigational/Non-FDA approved compounds (i.e., Domperidone, Estriol, and Cetyl Mesyrlioate Oil)? If Yes, please provide all Investigational New Drug Applications (INDs)." HMC answered "no." HMC later admitted it dispensed Estriol in compound medications for ESI members. HMC argues that Question 28 is ambiguous because Estriol is an ingredient, not a compound, and is not considered "investigational" by the FDA. HMC further argues the FDA does not "approve" compounds, and that Estriol had a USP monograph[10], allowing it to be used as an ingredient. When contract language is reasonably susceptible of more than one interpretation, it is inherently ambiguous. Alternative Med., 2016 WL 468647, at *5 (citing Stark

---

[10] A monograph is a written document or standard, that describes an item, such as a finished drug, a drug ingredient, or food chemical. A monograph published in any USP (United States Pharmacopeia) compendium provides: the name of a substance; its definition; package, storage, and labeling requirements; and information on tests needed to ensure the substance is of the appropriate strength, quality, and purity. www.usp.org/usp-nf (last visited Jan. 24, 2017).

v. Sandberg, Phoenix & von Gontard P.C., 381 F.3d 793, 801 (8th Cir. 2004)). The jury can consider the evidence regarding Estriol to determine if HMC's response was untruthful.

Question 30 of the Provider Certification asked: "Do you or your pharmacy(ies) use or provide pre-printed prescription forms for any of your compound preparations? If yes, please provide examples of any prescription forms." HMC answered "no," but later acknowledged that it used or provided prescription documents listing common formulas. The term "pre-printed prescription form" is not defined in the Provider Certification questionnaire. Moreover, the Provider Manual only restricts pre-printed forms that include a controlled substance. The Court cannot conclude on the evidence of record that HMC's response was untrue; all prescription forms contain some amount of preprinted matter. Again, this is a jury question.

Lastly, ESI contends HMC violated Section 2.9 of the Provider Manual by "split-filling," that is, taking a prescription and breaking it up into smaller quantities to evade a prior authorization requirement. This, according to ESI, constitutes circumvention of a plan sponsor's benefit design, which is expressly prohibited by the Agreement. It is undisputed that on June 1, 2014, ESI's client, the Pension, Hospitalization and Benefits Plan ("PHBP") of the International Brotherhood of Electrical Workers, stopped covering compound prescription claims in excess of $300 per claim, without prior plan approval (SOF at ¶ 26). Prior to June 1, 2014, HMC submitted prescription drug claims for PHBP-covered patients based on a 30-day supply (id. at ¶ 27); after that date, HMC submitted claims for PHBP-covered patients based on a 2-day supply (id. at ¶ 28). According to ESI, if HMC had submitted prescription drug claims for PHBP-covered patients based on anything more than a 2-day supply, the claims would have exceeded PHBP's $300 per claim cap (id. at ¶ 29). HMC disputes ESI's claim, arguing it was acting in accordance

with instructions from ESI itself about how to submit claims.[11] The jury can consider all the circumstances surrounding HMC's "split-filling" of prescriptions and determine whether HMC circumvented plan design by reducing prescription quantities.

**Conclusion**

Having determined that there are numerous factual disputes as to whether HMC materially breached its Agreement with ESI, the Court is unable to conclude as a matter of law that ESI had a contractual right to terminate HMC from its provider network. ESI's motion for partial summary judgment will, therefore, be denied. Because the issue of materiality is a threshold and potentially dispositive issue, the Court believes it is in the interest of orderly process and judicial economy to proceed on the contract based claims and allow a jury to finally determine whether there was in fact a material breach. When ESI filed its motion, the Court allowed phased discovery to proceed as it related to the issues raised therein. The Court made a determination at that time that HMC's contract based claims should be addressed before its antitrust claims would be considered. Although the parties have extensively briefed whether HMC has established the requisite antitrust injury and proximate causation to sustain their antitrust claims against ESI, the Court continues to believe it is necessary and appropriate to reserve ruling and reach a determination on whether ESI had a contractual right to terminate HMC from its provider network before allowing broad based anti-trust discovery, including third-party discovery, to go forward.

Accordingly,

---

[11] HMC submits a recording of a telephone conversation between HMC and an ESI help-desk employee from 2014. During that conversation, HMC asked about a compound claim that was being rejected. The ESI employee responded that the plan at issue has "a limit on compounds where they don't cover compounds over $300" and stated that "the compounds can be covered either by reducing the quantities to get under the $300 at retail or by calling the plan and getting the plan to authorize an amount over the $300." (Doc. Nos. 304-9, 325)

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment [192] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike Portions of John Gavin's Declaration Submitted by Defendant [312] is **GRANTED** in part and **DENIED** in part.

**IT IS FINALLY ORDERED** that this matter is set for a scheduling conference on **<u>Wednesday, February 22, 2017 at 2:30 p.m.</u>** in the chambers of the undersigned. Counsel may participate by telephone after filing a notice with the Court.

Dated this 3rd day of February, 2017.

                                                */s/ John A. Ross*
                                             **JOHN A. ROSS**
                                          **UNITED STATES DISTRICT JUDGE**