**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| HM COMPOUNDING SERVICES, LLC, et al., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:14-CV-01858 JAR |
| EXPRESS SCRIPTS, INC., | ) ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Plaintiffs' Motion to Compel Production and/or In Camera Review of Documents on Express Scripts' Privilege Log.[1] (Doc. No. 361) At issue is a privilege log produced by Express Scripts on June 10, 2016. The privilege log numbered 798 pages and listed some 7,000 documents withheld from production to Plaintiffs on the basis of attorney-client privilege and the work product doctrine. (Doc. No. 361-1). Plaintiffs argued that Express Scripts asserted privileges that were either presumptively invalid or so vague that they were unable to determine their validity. Given the scope and extent of the discovery disputes in this case, and after giving the parties every opportunity to limit those disputes, this Court appointed Stephen N. Limbaugh, Sr. of the firm Armstrong Teasdale as Special Master to resolve the parties' outstanding discovery issues, including, but not limited to, the manner and method of completing an *in camera* review of the documents on Express Scripts' privilege log. (Doc. No. 390)

By agreement of the parties and approval by the Special Master, the documents identified in Express Scripts' privilege log were produced in four phases. The log in each phase was presented to

---

[1] The Court previously denied Plaintiffs' motion as moot subject to the review of the Special Master. (Doc. No. 427)

Plaintiffs' counsel for identification of documents for *in camera* review. Express Scripts provided Plaintiffs' counsel with affidavits and memoranda supporting its assertion of the privilege. Plaintiffs then submitted a final and revised request for *in camera* review to the Special Master. In this way the parties substantially narrowed the Special Master's review to approximately 2,600 documents. Of those approximately 2,600 documents, the Special Master determined that some 650 documents were not subject to privilege and must be produced. The remaining 1,950 documents were determined to be privileged, as claimed by Express Scripts.

On February 21, 2018, the Special Master filed his Memorandum and Order recommending that Express Scripts be ordered to produce to Plaintiffs unredacted copies of the approximately 650 documents identified on three Privilege Determination Logs attached as Exhibit 7 ("Special Master Phase I"), Exhibit 8 ("Special Master Phases II-III"), and Exhibit 9 ("Special Master Phase IV"), and filed under seal. (Doc. No. 427)

On March 1, 2018, Express Scripts specifically objected to the Special Master's determination as to thirty-five entries on its privilege log, twenty-four of which involved attorney-client privilege and eleven of which involved work-product. (Doc. No. 429) In their response to Express Scripts' objections, Plaintiffs request that Express Scripts be required to re-review its remaining privilege log and de-privilege all documents which would not survive further challenge based on the Special Master's ruling. (Doc. No. 431)

Pursuant to Federal Rule of Civil Procedure 53(f) and the Court's Order appointing the Special Master, the Court must decide de novo all objections to conclusions of law or findings of fact made or recommended by the Special Master. Neither party has objected to the legal principles set forth by the Special Master that formed the basis of his conclusions or to the review procedure itself.

## I. Objections regarding communications determined by Special Master not to be protected by attorney-client privilege

Express Scripts has identified twenty-four entries on its privilege log which it maintains were subject to attorney-client privilege. In the following table, the Court has carefully considered the entries challenged by Express Scripts, Express Scripts' stated support for the privilege claimed, and the Special Master's privilege determination in its de novo review of the challenged determinations.

| Line | Express Scripts' Support for Privilege Claimed (Doc. No. 429) | Special Master's Original Determination | Court's De Novo Review of Challenged Determination |
|------|------|------|------|
| 427-428 | Line 428 is a communication from an Express Scripts employee, Jennifer Field, to multiple in-house counsel (David Arciszewski, Leah Stoecker, and Suzanne Strothkamp) seeking legal advice regarding Express Scripts' client Anthem. See Declaration of Leah Stoecker, ¶32 (Dkt. 427-2). Line 427 is a communication from in-house counsel (David Arciszewski) providing the requested legal advice. See Declaration of Leah Stoecker, ¶32 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. (427); Attorney-client privilege was claimed, and does not attach. (428). | Communication did not seek legal advice, does not reflect legal advice, and primarily concerns the extraneous/business matter of termination process and procedure.<br><br>**NO CHANGE** |
| 571 | Communication to senior staff, including the general counsel, Keith Ebling, providing information regarding the compound strategy for the purposes of seeking legal advice. *See* Declaration of Leah Stoecker, ¶32 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | Explicit goal of the communication does not involve supporting an effort to obtain legal advice.<br><br>**NO CHANGE** |
| 655 | Communication in which an Express Scripts employee, Michael Klein, specifically seeks legal advice from "Leah/Suzanne," i.e., in-house attorneys Leah Stoecker and Suzanne Strothkamp. *See* Declaration of Leah Stoecker, ¶34 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | Communication does not seek legal advice, does not reflect legal advice, and primarily concerns internal process/procedures for which departments handle certain issues.<br><br>**NO CHANGE** |

| 681 | These are meeting minutes which reflect a request for legal advice regarding Agenda Item No. 1. If this document is ordered to be produced, Express Scripts asks that it be produced with the request for legal advice redacted. *See* Declaration of Leah Stoecker, ¶30 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | Communication was not limited to internal counsel and does not reflect privileged legal advice from an attorney even if it notes that legal advice is needed.<br><br>**NO CHANGE** |
|---|---|---|---|
| 737 | Email communication in which the sender (Express Scripts employee Jim Garland) specifically adds in-house legal counsel (Leah Stoecker) to the email chain ("Adding Leah") in order to obtain her legal advice. *See* Declaration of Leah Stoecker, ¶30 (Dkt. 427-2). Ms. Stoecker responds in the next email on the chain (logged at line 736). This email was challenged and the Special Master sustained the privilege | Attorney-client privilege was claimed, and does not attach. | Communication does not reflect privileged legal advice from an attorney.<br><br>**NO CHANGE** |
| 852 | Email communication from in-house counsel (Leah Stoecker) providing legal advice ("From my perspective . . .") regarding contractual obligations and what information may be included in communications to pharmacies. *See* Declaration of Leah Stoecker, ¶32 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | Communication identifies legal advice from in-house counsel.<br><br>==**CHANGE – Attorney client privileged was claimed, and does attach.**== |
| 1307, 2757 | These are meeting minutes which reflect legal advice provided by Leah Stoecker and Richard Hauser regarding strategies on addressing compound issues. If this document is ordered to be produced, Express Scripts asks that it be produced with the legal advice redacted. (i.e. those references to where advice is sought from "L. Stoecker" or "R. Hauser"). *See* Declaration of Leah Stoecker, ¶30 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | Communication was not limited to internal counsel and does not reflect privileged legal advice from an attorney even if it notes that legal advice is needed.<br><br>**NO CHANGE** |

| 1725 | Email communication from an Express Scripts employee, Jonah Houts, to the General Counsel of PCCA, the trade association of which Express Scripts is a member and which is the focus of Plaintiffs' antirust claim in this litigation. The email was sent after this litigation began and is in regards to this litigation. Mr. Houts also copies Express Scripts litigation counsel, Urmila Baumann on this communication. As more fully set forth in the Special Master's Order (Dkt. 427, p. 5) and Express Scripts' legal memorandum (Dkt. 427-2, p. 32), such a communication is protected under the work product and attorney client privileges. | Attorney-client privilege was claimed, and does not attach. Attorney work product protection was claimed, and does not attach. | Communication is an email from an Express Scripts employee to third party's attorney asking him to contact an Express Scripts attorney to discuss a "declaration" from the third party and "shar[ing]" of the third party's policy. Objection misidentifies the third party as attorney of "PCCA." Third party attorney appears to represent "PCMA," an organization alleged to be a "co-conspirator" in the Amended Complaint. Communication does not seek legal advice, does not reflect legal advice, was not prepared by legal counsel, and does not contain mental impressions or investigative endeavors of an Express Scripts attorney. Without a privilege attaching to the communication initially, the common interest doctrine is generally inapplicable.<br><br>**NO CHANGE** |
|------|--------|--------|--------|

| 3196 | Communication from an Express Scripts employee, Michael Klein, to two paralegals (Winde Summerlin and Tina Italiano) and copying two in-house counsel (Leah Stoecker and Urmila Baumann). In the communication Mr. Klein specifically seeks legal advice regarding how to respond to a Request for Information from the U.S. Department of Health and Human Services and Office of the Inspector General regarding certain compounding pharmacies. *See* Declaration of Leah Stoecker, ¶12 (Dkt. 427-4). | Attorney-client privilege was claimed, and does not attach. | Communication is an email from Express Scripts employee asking two Express Scripts paralegals to coordinate collection of information from different Express Scripts departments in which the employee does not work, in order for the employee to respond to a US Government questionnaire, as directed by his supervisor (a non-attorney). Communication does not seek legal advice, does not reflect legal advice, and primarily concerns the extraneous matter of coordinating the collection of information from other Express Scripts departments. **NO CHANGE** |
|---|---|---|---|
| 3228 | Meeting invite titled "DJO Compounds – Audit and Legal consideration" in which in-house counsel, Suzanne Strothkamp, is invited. After providing information to the recipients, the sender states that she will be setting up a conference call with the "Retail Network, Fraud Tip, and Legal areas . . . ." This is a request for legal advice on this issue. *See* Declaration of Leah Stoecker, ¶32 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | Communication is a meeting invitation sent by an Express Scripts employee to nine Express Scripts employees, including only one attorney. The text of the meeting invitation primarily recites facts and non-litigation information requests from a third party. Communication does not seek legal advice, does not reflect legal advice, and primarily concerns the extraneous matter of inviting various Express Scripts employees to attend a conference call. **NO CHANGE** |

| 3405 | Email communication in which sender (Express Scripts employee Doug Childrenson) is relaying legal advice provided by in-house counsel Leah Stoecker: "I had a chance to talk to Leah and . . . ." If this document is ordered to be produced, Express Scripts asks that it be produced with the legal advice Mr. Childrenson received from Ms. Stoecker redacted. *See* Declaration of Leah Stoecker, ¶30 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | Communication is an email from an Express Scripts employee to other Express Scripts employees (all non-attorneys) in which the sender relays his intended future statement to a third party, in quotations. Communication does not seek legal advice and does not reflect privileged legal advice. There is no indication the future statement to a third party reflects any attorney's privileged legal advice.<br><br>**NO CHANGE** |
|---|---|---|---|
| 3803 | Communication from in-house counsel (Leah Stoecker) providing legal advice regarding the timing of when a pharmacy can be terminated and whether legal issues are implicated in connection with the termination. See Declaration of Leah Stoecker, ¶34 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | Communication is a June 5, 2014 (2:49 p.m.) email from an Express Scripts attorney to four Express Scripts non-attorney employees. The attorney specifies that the timing of a pharmacy termination is a business decision, raises only administrative business issues about the decision, and raises no legal issues. Communication does not reflect legal advice and primarily concerns the extraneous matter of a business decision as to the timing of a pharmacy termination.<br><br>**NO CHANGE** |

| 4824 | Communication between two in-house counsel (Leah Stoecker and David Arciszewski) providing information relating to network and pharmacy issues. This communication is solely between in-house counsel. *See* Declaration of Leah Stoecker, ¶32 (Dkt. 427-2). | Attorney work product protection was claimed, and does not attach. | The Special Master Privilege Determination Log entry in Column N, "Special Master Priv Review," indicates numbers 1 and 10. According to the Special Master's coding "menu" (Dkt. 427-6), number 1 corresponds to: "Attorney-client privilege was claimed and attaches because this confidential communication with counsel was primarily for legal advice." Number 10 corresponds to: "Attorney work product privilege was claimed and attaches because this document was prepared by legal counsel in anticipation (i.e. because of the prospect of litigation." The corresponding narrative in Column S is therefore a scrivener's error.

Accordingly, the Court's determination for Line 4824 is as follows:

**CHANGE – Attorney-client privilege was claimed, and attaches. Attorney work product protection was claimed, and attaches.** |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 4938 | Meeting invite which reflects a meeting with in-house counsel (Leah Stoecker) and the legal advice received during that meeting regarding audit of pharmacy and client issues. ("Leah, Mark, Russ and I met tonight . . . .") *See* Declaration of Leah Stoecker, ¶32 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | Communication is a meeting invitation sent by an Express Scripts non-attorney employee to seven Express Scripts employees, including only one attorney. The text of the meeting invitation primarily recites the sender's request to another Express Scripts employee to create a timeline of an audit and to summarize information already shared with a third party, as well as a request from another Express Scripts employee for information from other Express Scripts employees. Communication did not seek legal advice, does not reflect legal advice, and primarily concerns the extraneous matter of requesting a meeting and tasking other E Express Scripts SI employees. **NO CHANGE** |
| 5109 | Email communication sent directly to in-house counsel Leah Stoecker providing information regarding the investigation of a pharmacy for the purposes of seeking legal advice. See Declaration of Leah Stoecker, ¶34 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | Statement in the communication at issue explicitly states that the subject matter involves a business decision. Communication does not seek legal advice and does not reflect legal advice. **NO CHANGE** |

| 5118 | Email communication sent directly to in-house counsel Leah Stoecker providing information regarding the investigation of a pharmacy for the purposes of seeking legal advice. See Declaration of Leah Stoecker, ¶34 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | No request for or exchange of or recital of legal advice. Communication reflects information provided potentially in response to an attorney's request for information. No claim was made for work product privilege.<br><br>**NO CHANGE** |
|---|---|---|---|
| 5329 | Document prepared by in-house counsel that provides legal advice regarding alternative language approved by the in-house legal department for inclusion in Express Scripts' provider agreements. This same document was challenged at line 5353 and the Special Master sustained the privilege. See Declaration of Leah Stoecker, ¶30 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach.<br><br>DETERMINATION FROM LINE 5353:<br><br>Attorney-client privilege was claimed, and attaches. | Determination regarding the highest Bate Stamped version is the controlling version pursuant to the Special Master's February 21, 2018 Order (Doc. No. 427). As a result, attorney-client privilege was claimed in Line 5353 and was found to attach.<br><br>==**CHANGE - Determination from Line 5353: Attorney-client privilege was claimed, and attaches.**== |
| 5468-5469 | Line 5468 is an email communication from an Express Scripts employee, Cari Wegge, copying in-house counsel, Leah Stoecker. Ms.Wegge asks a question and the entry on line 5469 is Ms.Stoecker's response. Specifically, Ms. Stoecker responds to Ms. Wegge's question and provides legal advice as to whether there are legal implications involved in amendments to contracts. See Declaration of Leah Stoecker, ¶30 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | Statement in the communication at issue explicitly states that the subject matter involves a business decision. Communication does not seek legal advice and does not reflect legal advice.<br><br>**NO CHANGE** |

| 5621 | Communication from an Express Scripts employee, John Gavin, to in-house litigation counsel, Urmila Baumann, regarding claims being submitted by OmniPlus Pharmacy, with whom Express Scripts was engaged in litigation. The purpose of such a communication was clearly to seek legal advice about a pharmacy in pending litigation with Express Scripts. *See* Declaration of Leah Stoecker, ¶28 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | Communication did not seek legal advice and does not reflect legal advice.<br><br>**NO CHANGE** |
|---|---|---|---|
| 5777 | Communication from Thomas Eich to John Gavin providing information that was prepared at the request of in-house counsel (Leah Stoecker). The next email in the string (at 3:59 p.m.) demonstrates that the information was prepared at the request of in-house counsel ("John, here is the bulleted overview Leah requested"). *See* Declaration of Leah Stoecker, ¶34 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | The redacted information is a summary of facts – how many waived and reduced copays (among other things) for each of the pharmacies listed. Nothing privileged about the facts.<br><br>The manner in which the information was gathered does not appear to be privileged. Although Express Scripts states that the next email in the chain shows that it was requested by Leah Stoecker, the specific email they reference refers to a "bulleted overview" attachment, which is not included in the email.<br><br>**NO CHANGE** |

| | | |
|---|---|---|
| 5980, 5982 | In the last sentence of this email, an Express Scripts employee is specifically asking in-house counsel (Leah Stoecker and Richard Hauser) for legal advice regarding guidance documents that are attached to the email. *See* Declaration of Leah Stoecker, ¶30 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. (on both) | Communication did not seek legal advice and does not reflect legal advice, but merely forwards non-privileged position paper from Defense Health Agency for internal review ("FYI"). **NO CHANGE**. |
| 6012 | This is a presentation titled "Legal Presentation on Retail" that in-house counsel (Leah Stoecker) sent to another in-house counsel (Allison Stoll). The presentation contains legal advice on retail contracting issues. *See* Declaration of Leah Stoecker, ¶30 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. | Communication between in-house counsel involves a presentation summary of basic non-privileged facts about Express Scripts retail contracting practice. Does not reflect legal advice or a request for legal advice. **NO CHANGE** |
| 6726 | Email communication to in-house counsel (Leah Stoecker) reflecting legal advice received from other Express Scripts' in-house counsel at meeting relating to termination of a Pharmacy Services Administrative Organization ("PSAO"). *See* Declaration of Leah Stoecker, ¶32 (Dkt. 427-2). This email is further protected by the work product privilege as set forth below. | Attorney-client privilege was claimed, and does not attach. Attorney work product protection was claimed, and does not attach. | Communication did not seek legal advice and does not reflect legal advice. **NO CHANGE** |

| 7133 | Communication from in-house litigation counsel (Urmila Baumann) to an Express Scripts employee, Bonnie Roberts, forwarding information regarding this litigation and her deposition scheduled for the following day. *See* Declaration of Leah Stoecker, ¶¶25-28 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. Attorney work product protection was claimed, and does not attach. | The Express Scripts original privilege log describes this document as: "Communication from in house counsel providing information for pending HM Compounding litigation and which reflects thoughts and opinions of counsel." On its face and absent further context, the communication does not reflect legal advice, a request for legal advice, or reveal attorney thoughts and impressions. If this communication—wherein Ms. Baumann states that she will see Ms. Roberts "tomorrow morning"—does actually relate to preparations for and discussions surrounding Ms. Roberts' deposition in this litigation as Express Scripts now suggests, then the claimed privileges apply. Nevertheless, Express Scripts' revised privilege support statement in the course of stating its objections to the Special Master's determinations reflects an inadequate effort on the part of Express Scripts to accurately describe the basis of its privilege claims in its original privilege log.

**CHANGE – Attorney-client privilege was claimed, and attaches. Attorney work product protection was claimed, and attaches.** |

## II.     Objections regarding communications determined by Special Master not to be protected by work product privilege

Express Scripts has identified eleven entries on its privilege log which it maintains were subject to work product privilege. The Court has carefully considered the entries challenged by Express Scripts, Express Scripts' stated support for the privilege claimed, and the Special Master's privilege determination in its de novo review of the challenged determinations.

| Line | Express Scripts' Support for Privilege Claimed (Doc. No. 429) | Special Master's Original Determination | Court's De Novo Review of Challenged Determination |
|------|------|------|------|
| 131 | Both of these documents were attachments to an email, logged at 129, which was challenged by Plaintiffs and the Special Master sustained the challenge. The attachments are also protected because they were prepared by or at the direction of in-house counsel (Leah Stoecker) and reflect the thoughts and impressions of counsel. One of these attachments specifically references potential litigation. *See* Declaration of Leah Stoecker, ¶34 (Dkt. 427-2). | Attorney work product protection was claimed, and does not attach. | The communication is a form letter requesting the return of funds to Defendant.  A reference in the form letter to "additional action by [Defendant], up to and including litigation" is, at best, an anticipation of a remote prospect of future litigation, as the form letter makes clear that the payments are to be returned because they were simply made in error.  The letter does not contain anything that could be considered an attorney's mental impression regarding ongoing or anticipated litigation.  **NO CHANGE** |

| Line | Express Scripts' Support for Privilege Claimed (Doc. No. 429) | Special Master's Original Determination | Court's De Novo Review of Challenged Determination |
|------|------|------|------|
| 132 | Both of these documents were attachments to an email, logged at 129, which was challenged by Plaintiffs and the Special Master sustained the challenge. The attachments are also protected because they were prepared by or at the direction of in-house counsel (Leah Stoecker) and reflect the thoughts and impressions of counsel. One of these attachments specifically references potential litigation. *See* Declaration of Leah Stoecker, ¶34 (Dkt. 427-2). | Attorney-client privilege was claimed, and attaches. Attorney work product protection was claimed, and does not attach. | Special Master determined that the communication was subject to the attorney-client privilege. As to the work product doctrine, the communications concern Plaintiff's request for an internal, administrative "appeal hearing" with Defendant, which is not litigation. Defendant's employees' communications in processing of the request were otherwise prepared in the ordinary course of business.<br><br>**NO CHANGE** |

| Line | Express Scripts' Support for Privilege Claimed (Doc. No. 429) | Special Master's Original Determination | Court's De Novo Review of Challenged Determination |
|---|---|---|---|
| 481 | Both of these documents were prepared by outside counsel (Christopher Smith) for this litigation. *See* Declaration of Christopher Smith (Dkt. 427-2, ¶3). The email from Christopher Smith that attached these documents is logged at Line 480 and was not challenged by Plaintiffs. Plaintiffs should not receive outside counsel's work product for the present litigation. | Attorney-client privilege was claimed, and does not attach. Attorney work product protection was claimed, and does not attach. | The document is a spreadsheet displaying prescription information, including patient names, patient dates of birth, physician names, drug descriptions, and insurance company abbreviations. The spreadsheet was reportedly attached to an email from Defendant's outside counsel to an Express Scripts non-attorney employee, copying Express Scripts legal employees. The spreadsheet relays facts. The facts are neither organized nor displayed in a way indicating a mental impression or investigative endeavor of an attorney.<br><br>**NO CHANGE** |

| Line | Express Scripts' Support for Privilege Claimed (Doc. No. 429) | Special Master's Original Determination | Court's De Novo Review of Challenged Determination |
|---|---|---|---|
| 482 | Both of these documents were prepared by outside counsel (Christopher Smith) for this litigation. See Declaration of Christopher Smith (Dkt. 427-2, ¶3). The email from Christopher Smith that attached these documents is logged at Line 480 and was not challenged by Plaintiffs. Plaintiffs should not receive outside counsel's work product for the present litigation. | Attorney-client privilege was claimed, and does not attach. Attorney work product protection was claimed, and does not attach. | The document is a spreadsheet displaying prescription information, including patient names, patient dates of birth, physician names, drug descriptions, and insurance company abbreviations. The spreadsheet was reportedly attached to an email from Defendant's outside counsel to an Express Scripts non-attorney employee, copying Express Scripts legal employees. The spreadsheet relays facts. The facts are neither organized nor displayed in a way indicating a mental impression or investigative endeavor of an attorney.<br><br>**NO CHANGE** |

| Line | Express Scripts' Support for Privilege Claimed (Doc. No. 429) | Special Master's Original Determination | Court's De Novo Review of Challenged Determination |
|------|---------------------------------------------------------------|------------------------------------------|----------------------------------------------------|
| 1891 | Each of these documents were attachments to an email to in-house counsel logged at Line 1887. Plaintiffs challenged that email and the Special Master sustained the privilege. The contents of that privileged email establish that these documents were created at the request of in-house litigation counsel (Urmila Baumann) for this litigation and reflect the thoughts and impressions of counsel. *See* Declaration of Leah Stoecker, ¶¶25-28 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. Attorney work product protection was claimed, and does not attach. | The spreadsheets at lines 1891-1893 are attachments to an email from Dani Felder to Urmila Baumann (attorney). Urmila asked for reporting information regarding compound pharmacies doing greater than 5% compounding at specific time periods in 2012-2015. Dani Felder says she already has this information "on hand." She runs the reports requested.<br><br>It is clear that the email and request for info are made because of the HM Compounding lawsuit. The Special Master sustained A/C privilege **and** Work Product on the email.<br><br>The summary reports are simply a compilation of information that the business unit possessed. They are facts from the business unit regarding claims volume, compounding volume, etc. The facts are neither organized nor displayed in a way indicating a mental impression or investigative endeavor of an attorney.<br><br>**NO CHANGE** |

| Line | Express Scripts' Support for Privilege Claimed (Doc. No. 429) | Special Master's Original Determination | Court's De Novo Review of Challenged Determination |
|---|---|---|---|
| 1892 | Each of these documents were attachments to an email to in-house counsel logged at Line 1887. Plaintiffs challenged that email and the Special Master sustained the privilege. The contents of that privileged email establish that these documents were created at the request of in-house litigation counsel (Urmila Baumann) for this litigation and reflect the thoughts and impressions of counsel. *See* Declaration of Leah Stoecker, ¶¶25-28 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. Attorney work product protection was claimed, and does not attach. | See secondary determination for line 1891.<br><br>**NO CHANGE** |
| 1893 | Each of these documents were attachments to an email to in-house counsel logged at Line 1887. Plaintiffs challenged that email and the Special Master sustained the privilege. The contents of that privileged email establish that these documents were created at the request of in-house litigation counsel (Urmila Baumann) for this litigation and reflect the thoughts and impressions of counsel. *See* Declaration of Leah Stoecker, ¶¶25-28 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach. Attorney work product protection was claimed, and does not attach. | See secondary determination for line 1891.<br><br>**NO CHANGE** |
| 3096 | This is a ***draft*** termination letter prepared by in-house counsel. These termination letters are drafted in anticipation of litigation. *See* Declaration of Leah Stoecker, ¶34 (Dkt. 427-2, p. 12). The email in which Ms. Stoecker attached this draft letter is logged at Line 3095. This email was challenged and the Special Master sustained the privilege. | Attorney work product protection was claimed, and does not attach. | Attorney-client privilege was upheld on the cover email between counsel. Work product privilege was the only privilege claimed regarding the attachment letter. The anticipated litigation claimed is remote.<br><br>**NO CHANGE** |

| Line | Express Scripts' Support for Privilege Claimed (Doc. No. 429) | Special Master's Original Determination | Court's De Novo Review of Challenged Determination |
|---|---|---|---|
| 3357 | This is a draft letter from in-house counsel (Leah Stoecker) to outside counsel that was representing a terminated pharmacy (Inverness Apothecary). Clearly, this letter reflects the thoughts and impressions of counsel and, given that she was corresponding with an attorney, was done in anticipation of litigation. | Attorney-client privilege was claimed, and does not attach.<br><br>Attorney work product protection was claimed, and does not attach. | Communication does not contain legal advice to a client. (Plaintiffs are not challenging the AC determination).<br>Even if it is a draft, it is not work product because a letter explaining the termination of a pharmacy when such termination is questioned, but where there has been no specific threat of litigation, is not prepared in anticipation of some specific litigation. Instead, it was written with the general sense that litigation is possible.<br><br>**NO CHANGE** |
| 3388 | This is a draft letter from in-house counsel (Leah Stoecker) to outside counsel that was representing a terminated pharmacy (River Crossing Pharmacy). Clearly, this letter reflects the thoughts and impressions of counsel and, given that she was corresponding with an attorney, was done in anticipation of litigation. | Attorney-client privilege was claimed, and does not attach.<br><br>Attorney work product protection was claimed, and does not attach. | Communication does not contain legal advice to a client. (Plaintiffs are not challenging the AC determination).<br>Even if it is a draft, it is not work product because a letter explaining the termination of a pharmacy when such termination is questioned, but where there has been no specific threat of litigation, is not prepared in anticipation of some specific litigation. Instead, it was written with the general sense that litigation is possible.<br><br>**NO CHANGE** |

| Line | Express Scripts' Support for Privilege Claimed (Doc. No. 429) | Special Master's Original Determination | Court's De Novo Review of Challenged Determination |
|------|------|------|------|
| 4317 | This is a draft letter from in-house counsel (Leah Stoecker) to outside counsel that was representing a terminated pharmacy (Concierge Pharmacy). Clearly, this letter reflects the thoughts and impressions of counsel and, given that she was corresponding with an attorney, was done in anticipation of litigation. | Attorney work product protection was claimed, and does not attach. | Unclear that this is a draft—note at top indicates it was to be distributed via email. If actually sent, then work product waived because it was disclosed to an adversary.<br><br>Even if it is a draft, it is not work product because a letter explaining the termination of a pharmacy when such termination is questioned. but where there has been no specific threat of litigation, is not prepared in anticipation of some specific litigation. Instead, it was written with the general sense that litigation is possible.<br><br>**NO CHANGE** |

| Line | Express Scripts' Support for Privilege Claimed (Doc. No. 429) | Special Master's Original Determination | Court's De Novo Review of Challenged Determination |
|------|---------------------------------------------------------------|------------------------------------------|-----------------------------------------------------|
| 4410 | This is a draft letter from in-house counsel (Leah Stoecker) to outside counsel that was representing a terminated pharmacy (OmniPlus Pharmacy). Clearly, this letter reflects the thoughts and impressions of counsel and, given that she was corresponding with an attorney, was done in anticipation of litigation. | Attorney work product protection was claimed, and does not attach. | Unclear that this is a draft—note at top indicates it was to be distributed via email. If actually sent, then work product waived because it was disclosed to an adversary.<br><br>Even if it is a draft, it is not work product because a letter explaining the termination of a pharmacy when such termination is questioned, but where there has been no specific threat of litigation, is not prepared in anticipation of some specific litigation. Instead, it was written with the general sense that litigation is possible.<br><br>**NO CHANGE** |

| Line | Express Scripts' Support for Privilege Claimed (Doc. No. 429) | Special Master's Original Determination | Court's De Novo Review of Challenged Determination |
|---|---|---|---|
| 6725 | This is a **_draft_** letter from in-house counsel (Leah Stoecker) to outside counsel that was representing a terminated PSAO (Pharmacy Providers of Oklahoma). Clearly, this letter reflects the thoughts and impressions of counsel and, given that she was corresponding with an attorney, was done in anticipation of litigation. | Attorney work product protection was claimed, and does not attach. | Unclear that this is a draft—note at top indicates it was to be distributed via email. If actually sent, then work product waived because it was disclosed to an adversary.<br><br>Even if it is a draft, it is not work product because a letter explaining the termination of a pharmacy when such termination is questioned, but where there has been no specific threat of litigation, is not prepared in anticipation of some specific litigation. Instead, it was written with the general sense that litigation is possible.<br><br>**NO CHANGE** |
| 6726 | In addition to being protected by the attorney client privilege, this document is also protected by the work product privilege as it reflects the thoughts and impressions of counsel regarding the termination of PSAO (Pharmacy Providers of Oklahoma). _See_ Declaration of Leah Stoecker, ¶32 (Dkt. 427-2). | Attorney-client privilege was claimed, and does not attach.<br><br>Attorney work product protection was claimed, and does not attach. | To the extent litigation is considered in the information outlined, it is too remote to support a claim of work product privilege.<br><br>**NO CHANGE** |

| Line | Express Scripts' Support for Privilege Claimed (Doc. No. 429) | Special Master's Original Determination | Court's De Novo Review of Challenged Determination |
|------|---------------------------------------------------------------|------------------------------------------|-----------------------------------------------------|
| 7133 | Communication from in-house litigation counsel (Urmila Baumann) to an Express Scripts employee, Bonnie Roberts, sending information regarding this litigation and Ms. Roberts' upcoming deposition. The decision as to what information to send reveals an attorney's thoughts and impressions and is protected by the work product doctrine. *See* Declaration of Leah Stoecker, ¶¶25-28 (Dkt. 427-2); Special Master's Order, pp. 5-6 (Dkt. 427). | Attorney-client privilege was claimed, and does not attach.<br><br>Attorney work product protection was claimed, and does not attach. | The Express Scripts original privilege log describes this document as: "Communication from in house counsel providing information for pending HM Compounding litigation and which reflects thoughts and opinions of counsel." On its face and absent further context, the communication does not reflect legal advice, a request for legal advice, or reveal attorney thoughts and impressions. If this communication—wherein Ms. Baumann states that she will see Ms. Roberts "tomorrow morning"—does actually relate to preparations for and discussions surrounding Ms. Roberts' deposition in this litigation as Express Scripts now suggests, then the claimed privileges apply. Nevertheless, Express Scripts' revised privilege support statement in the course of stating its objections to the Special Master's determinations reflects an inadequate effort on the part of Express Scripts to accurately describe the basis of its privilege claims in its original privilege log.<br><br>**CHANGE – Attorney-client privilege was claimed, and attaches. Attorney work product protection was claimed, and attaches.** |

Based on the foregoing, the Court will sustain Express Scripts' objections as to Lines 852, 4824, 5329, and 7133. In all other respects, the Court will adopt the Special Master's Report and Recommendation.

Accordingly,

**IT IS HEREBY ORDERED** that in accordance with the rulings herein, the Report of Special Master [427] is **SUSTAINED, ADOPTED AND INCORPORATED HEREIN**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel Production and/or In Camera Review of Documents on Express Scripts' Privilege Log [361] is **GRANTED** in part and **DENIED** in part consistent with the rulings and recommendations of the Special Master as contained in Exhibits 7, 8 and 9 to the Report and incorporated by reference herein. (Doc. Nos. 427-7, -8, -9)

**IT IS FINALLY ORDERED** that Express Scripts shall, within seven (7) days of the date of this Order, produce to Plaintiffs unredacted copies of those documents not subject to privilege identified on the Privilege Determination Logs attached as Exhibit 7 ("Special Master Phase I"), Exhibit 8 ("Special Master Phases II-III"), and Exhibit 9 ("Special Master Phase IV") to the Special Master's Report.

Dated this 25th day of April, 2018.

*John A. Ross*
_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**