# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

HM COMPOUNDING SERVICES, LLC, )
and HMX SERVICES, LLC, )
)
Plaintiffs, )
)
v. ) No. 4:14-CV-01858 JAR
)
EXPRESS SCRIPTS, INC., )
)
Defendant. )

## MEMORANDUM AND ORDER

This matter is before the Court on Express Scripts' Motions to Exclude Expert Report and Testimony of Plaintiff's experts Loyd Allen (Doc. No. 466), Kenneth Schafermeyer (Doc. No. 469), and Richard Moon (Doc. No. 474), and Express Scripts' Motion for Reconsideration and For Sanctions Concerning the Production of Cash Transactions (Doc. No. 498) and Request for Terminating Sanctions in Connection with Plaintiffs' Discovery Misconduct (Doc. No. 521).[1] The Court took up these motions at a hearing on October 12, 2018. Because the issue of sanctions is intertwined with the Court's rulings on Express Scripts' Daubert motions, the Court will address them together. There are also pending motions for summary judgment (Doc. Nos. 472, 478), which will be addressed separately.

## I. Background

As the Court noted at the hearing on October 12, this four-year old case has been vigorously contested since its inception. There is no question that vigorously contested litigation can become contentious. While some of the discovery disputes in this case have not necessarily

---

[1] Following a hearing on July 19, 2018 on Express Scripts' Motion for Order to Show Cause and Sanctions, the Court granted the motion in part and reserved ruling on additional sanctions. (Doc. No. 464) ESI is now renewing its request for sanctions.

been out of the ordinary, there came a point in time when the Court determined it necessary – given the scope and extent of the discovery disputes, and after giving the parties every opportunity to limit those disputes – to appoint a Special Master to resolve some of the parties' discovery issues.

Among the discovery issues addressed by the Special Master was ESI's motion to compel production of documentation pertaining to HM's cash transactions. (Doc. No. 499-4) The issue of cash transactions is relevant because under the parties' Agreement HM was entitled to seek reimbursement for covered medications at the lesser of the Average Wholesale Price (AWP) or the "usual and customary" price (U&C), which is based on sales to cash paying customers. Records of cash transactions will show whether the price submitted to ESI reflected what HM actually charged its cash customers. HM opposed the motion, stating it had searched its pharmacy database Micro Merchant, and confirmed there "were no such transactions." HM attached a sworn declaration from its Chief Marketing Officer Spencer Malkin in support, stating that "HM searched its records to determine whether [HM]'s records contain any record of its customers paying cash for a dispensed compound prescription during the time period January 1, 2014 through August 31, 2014 and found no such records." (Doc. No. 499-5) The Special Master recommended the ESI's motion be denied based on the representations of Malkin as well as the representations of HM's counsel (Doc. No. 445 at 5-6), and the Court adopted the Special Master's report and recommendation (Doc. No. 447).

By the time fact discovery closed on April 26, 2018, HM had produced a mere 1,263 documents to ESI.[2] Two months later, on June 14, 2018, well after the completion of depositions and expert reports, HM produced 18,619 documents to ESI. HM produced 24 more documents

---

[2] From ESI's "Production Tracker: HM Compounding's Document Productions," attached to its reply in support of its request for terminating sanctions. (Doc. No. 529-1).

on June 22, 2018, and 81 more documents on July 1, 2018. Then, on July 9, 2018, HM – without notice to ESI – produced an additional 28,070 documents. Based on these untimely productions totaling 46,794 documents, ESI filed a motion for an order to show cause and for sanctions on July 11, 2018, seeking, *inter alia*, an explanation for HM's untimely production. (Doc. No. 451)

In response, HM asserted "substantial justification" for its late production of documents, explaining that it had believed a 2014 e-mail archive with responsive documents was destroyed in a vendor dispute with its then IT vendor EOX/Intermedia in 2016. In April 2018, HM discovered a mirror image copy of the 2014 e-mail archive at another vendor, Advanced Network Consulting. HM represented that the post-discovery production came from that re-discovered 2014 mirror image e-mail archive, which according to HM, was not previously known or available to them. HM submitted a declaration from its Chief Marketing Officer Spencer Malkin (Doc. No. 459-1) outlining these issues, and representing that as of July 16, 2018, "all relevant documents located within the archive have since been produced to Defendants." (Id. at ¶ 12)

The Court held a hearing on ESI's motion on July 19, 2018. At that hearing, counsel for HM indicated that additional documents from the 2014 archive were being withheld as privileged. The Court granted ESI's motion for sanctions, finding HM's conduct in failing to timely provide documents was, at a minimum, grossly negligent and ordering HM to produce all documents including those on its privilege log in a readable format for attorneys' eyes only. The Court further ordered HM to produce for deposition, at its cost and expense, two of its employees regarding the evidence disclosed in HM's recent document production, as well as a corporate representative to testify regarding HM's recent document production. (Doc. No. 464) The Court reserved ruling on any other sanctions following the completion of the additional discovery on

HM's late production, and the explanation for it. Thereafter, between July 23 and August 22, 2018,[3] HM produced 71,470 documents that had previously been withheld, including a spreadsheet created in 2014 by Marc Poirier, HM's Chief Financial Officer, detailing thousands of cash transactions processed by HM. (Doc. No. 498-7) Poirier drew on records from Micro Merchant to arrive at an estimated breakdown of cash versus insured transactions processed by HM as of September 16, 2014. This spreadsheet directly contradicts representations made by HM and Malkin to both the Special Master and this Court that there were no such records.[4]

HM has now admitted that Malkin's representation that there were no records of cash transactions was false. In its response to ESI's motion for reconsideration and for sanctions concerning the production of cash transactions filed on September 10, 2018, HM submitted an unsworn declaration from Malkin stating that

> The statement in my prior Declaration . . . was made based on a search I directed my staff to make. Specifically, I understood that the relevance of 'cash sales' had to do with ESI claiming that HMC was selling prescriptions for cash at a price lower than AWP. I therefore directed my staff to run a search for records reflecting cash sales at a price different than AWP. That search was run and it was reported to me by my staff that HMC had no records of such transactions. Accordingly, my prior Declaration should have said that a review of HM New Jersey's pharmacy's records do not contain any record of its customers paying cash for a dispensed compound prescription during the period January 1, 2014 through August 31, 2014 that was lower than the AWP charged for those same compounds. ***The statement that there were no records of any cash transactions at all was incorrect.*** (emphasis added)

---

[3] Apparently there was some back and forth between the parties because the documents produced by HM on July 23 were not in a readable format and had to be resent. Counsel for ESI represented at the October 12 hearing that the documents produced between July 23 and August 22 were "effectively the same documents." (Transcript of Proceedings on October 12, 2018, Doc. No. 525 at 65:9-21)

[4] When ESI deposed HM's corporate representative Spencer Malkin in 2016 on HM's cash transactions, Malkin testified there were "some" cash transactions but that they were priced the same as the insured claims submitted to ESI. (Cash transactions priced the "same" as insured submissions would not create a U&C reimbursement issue.)

- 4 -

The Court-ordered depositions took place on September 27 and 28, 2018. The following week, HM produced over 1,100 additional documents consisting of records of system edits and overrides for prescription claims submitted to ESI for reimbursement ("the audit trail") from its pharmacy database Micro Merchant. This information had been the subject of a number of discovery requests by ESI as far back as September 2015 (Doc. No. 453-1), yet in September 2017, HM's counsel represented "we are not aware of any overrides being performed so we have not identified any documents responsive to this request . . . As we understand this request . . . we do not have any documents responsive to this request." (Doc. No. 453-6) HM acknowledged at the October 12 hearing that documents from Micro Merchant have always been available to it (and had nothing to do with the IT vendor dispute) and again contradict its previous representations that such records do not exist.

On October 10, 2018, ESI filed a request for terminating sanctions in connection with HM's discovery misconduct. ESI asserts that HM's records of uninsured/cash transactions and the audit trail are relevant not only to its claims and defenses, but also to HM's compliance with the Provider Agreement and its alleged damages and lost profits. The documents also impact the opinions and assumptions offered by each of HM's proffered experts, as discussed below. The Court held a hearing on October 12, 2018 to address the parties' motions for summary judgment and ESI's Daubert motions and took up ESI's sanctions motions as well.

## II. Discussion

### A. Sanctions

The Court's authority to sanction a party for its discovery misconduct flows from its inherent power to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases, including fashion[ing] an appropriate sanction for conduct which abuses the

judicial process." Knapp v. Convergys Corp., 209 F.R.D. 439, 442 (E.D. Mo. 2002) (internal quotation omitted). Pursuant to Rule 37, a district court has broad discretion to impose sanctions for discovery violations, see Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642–43 (1976) (per curiam), including "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (v) dismissing the action or proceeding in whole or in part . . ." Fed. R. Civ. P. 37.

ESI has requested the Court dismiss HM's claims with prejudice as a sanction for its discovery misconduct. ESI further requests the Court (i) strike HM's answer "on the U & C claims"; (ii) issue an adverse inference instruction that the withheld and presumptively lost records of HM's cash transactions are favorable to ESI and unfavorable to HM; (iii) admit the Poirier spreadsheet for what it shows; (iv) strike the opinions of Plaintiffs' damages expert Kenneth Schafermeyer in their entirety and those portions of the opinions of Plaintiffs' experts Loyd Allen and Richard Moon that did not consider the U & C issue based upon HM's false representations that they had no cash transactions; (v) prohibit HM from using any of the late produced documents or information derived therefrom, while permitting ESI to use the documents and information as appropriate; (vi) permit ESI to inform the jury that HM withheld the newly produced documents from production during discovery in this case; (vii) award ESI its fees and costs associated with HM's discovery violations; and (viii) order HM to pay a penalty to the registry of the Court as a deterrent sanction.

"The central requirement of Rule 37 is that 'any sanction must be just,' which requires in cases involving severe sanctions that the district court consider whether lesser sanctions would

be more appropriate for the particular violation." Bonds v. Dist. of Columbia, 93 F.3d 801, 808 (D.C. Cir.1996) (quoting Insurance Corp. v. Compagnie des Bauxites de Guinée, 456 U.S. 694, 707 (1982)). "The choice of sanction should be guided by the 'concept of proportionality' between offense and sanction." Id. "In determining whether a severe sanction is justified, the district court may consider the resulting prejudice to the other party, any prejudice to the judicial system, and the need to deter similar misconduct in the future." Id.

The Court is reluctant to direct dismissal of the case, believing that this severest of sanctions should be reserved for the most egregious conduct such as intentional concealment or spoliation. Based on the information and evidence, the Court cannot say conclusively that HM acted intentionally. However, following its October 12 hearing, the Court is more firmly convinced of HM's gross misconduct in failing to comply with the Federal Rules of Civil Procedure regarding discovery and this Court's Orders. Admittedly false declarations were submitted and misrepresentations were made to opposing counsel as well as to the Special Master and this Court with clear, reckless disregard for the truth of the matters. Thousands of documents were produced well after the close of discovery and years into the litigation after repeated representations throughout discovery that HM had searched "all sources," produced "all responsive documents", and had "no other documents" responsive to ESI's requests. As a result, expert reports were prepared and dispositive motions filed – all without the benefit of access to these documents. HM's explanation for its late production is entirely unacceptable and inexcusable.

Therefore, after careful consideration, the Court finds the following sanctions appropriate to address the gross misconduct and reckless disregard that has occurred in this case. The Court will allow ESI to use the late produced documents and information as appropriate and will admit

the Poirier spreadsheet for what it shows, i.e., evidence of thousands of cash claims for prescriptions priced below AWP and the U&C cash prices HM was submitting to ESI for reimbursement. In addition, HM shall be prohibited from using any of the late produced documents or information derived therefrom.[5] For this reason, the Court finds it unnecessary to inform the jury that HM withheld the recently produced documents during discovery. Further, as discussed in more detail below, the Court will strike the opinions of HM's damages expert Kenneth Schafermeyer in their entirety as well as those portions of the opinions of HM's experts Lloyd Allen and Richard Moon that relied on HM's false representations that it had no cash transactions. Lastly, the Court will award ESI its fees and costs associated with its sanction motions and court appearances. ESI is hereby directed to submit its fees and costs for the Court's review under seal as soon as possible.

The Court will reserve ruling on ESI's request that HM's answer on the U&C claims be stricken. It is unclear as to what claims ESI's request applies, and in any event, with the production of the Poirier spreadsheet, ESI has the evidence to establish this claim. Likewise, the Court will reserve ruling on ESI's request for an adverse inference instruction concerning HM's withheld and presumptively lost records of cash transactions. Such an instruction is neither necessary nor appropriate at this point. The Court can determine whether such an instruction should be given at the time of trial.

### B. Daubert motions

HM has designated Kenneth Schafermeyer, R.Ph., Ph.D., as its expert to testify on HM's claimed damages; Loyd Allen, R.Ph., Ph.D., as its expert to testify regarding, *inter alia*, unpaid claims submitted by HM to ESI; and Richard Moon, PharmD, R.Ph., FIACP, as its expert to

---

[5] The Court notes that at the October 12 hearing, counsel for HM represented that HM was not relying on any of the late produced documents. (Transcript at 52:6-10)

testify regarding various pharmacy-specific issues in this case.[6] ESI moves to exclude their testimony and opinions. ESI does not challenge their qualifications or experience, but argues their opinions are neither relevant nor reliable. Again, as discussed above, the issue of sanctions overlaps and is intertwined with ESI's Daubert motions.

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. A district court acts as a "gatekeeper" when screening expert testimony for relevance and reliability. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 590-93 (1993); Russell v. Whirlpool Corp., 702 F.3d 450, 456 (8th Cir. 2012). To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." Barrett v. Rhodia, Inc., 606 F.3d 975, 980 (8th Cir. 2010) (quoting Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006)). To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. Id.

A court is entitled to substantial discretion in determining whether expert testimony should be allowed. "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." Russell, 702 F.3d at 456-57 (quotation omitted). "An expert's opinion should be excluded only if that opinion is so fundamentally unsupported that it can offer no assistance to the jury." Synergetics, Inc. v. Hurst, 477 F.3d 949, 956 (8th Cir. 2007) (internal quotation marks and citation omitted); see also Minn.

---

[6] HM also disclosed Allen and Moon as rebuttal experts "on the subject of compound pharmacy and other retail pharmacy gross and net margins", and referred to their deposition testimony for the opinions to be presented at trial. (Doc. Nos. 440-1, -2) ESI has moved to strike their rebuttal opinions for failing to provide rebuttal reports for either expert. (Doc. No. 440) It is unclear to the Court what Allen's or Moon's rebuttal opinions are, or the basis for their opinions. For this reason, the Court will reserve ruling on ESI's motion.

Supply Co. v. Raymond Corp., 472 F.3d 524, 544 (8th Cir. 2006) (quotation omitted). "[D]oubts regarding the usefulness of an expert's testimony" are resolved in favor of admissibility, Marmo, 457 F.3d at 758; accord Johnson v. Mead Johnson & Co., 754 F.3d 557, 562 (8th Cir. 2014), because "[a]n expert's opinion should be excluded only if that opinion is so fundamentally unsupported that it can offer no assistance to the jury, Synergetics, Inc. v. Hurst, 477 F.3d 949, 956 (8th Cir. 2007) (internal quotation marks and citation omitted).

As noted above, HM's discovery misconduct directly affects the testimony and reports of each of HM's experts. All three experts acknowledged that HM's U&C prices would have affected their analyses/opinions, but that they did not consider this factor based on unsupported (and now admittedly false) representations from HM and Malkin that there were no records of cash transactions. Schafermeyer states that because HM sold only a "handful of cash prescriptions in cases where a particular drug wasn't covered by a third-party plan, there was no basis for determining a usual and customary price." (Schafermeyer Report, Doc. No. 470-1 at 3 n. 3, 5) In contrast, Allen states HM had no cash transactions and thus no "usual and customary" pricing model. As a result, Allen opines that HM's only option was to use the AWP plus fee model, which, he states, was used "appropriately and consistently." (Allen Report, Doc. No. 467-1 at 28) Similarly, Moon notes in his report that "[t]he vast majority of the pharmacies during the Relevant Period that billed compounds did not have cash paying business [sic], as was the case with HM Compounding." (Moon Report, Doc. No. 476-1 at 3) As discussed above, however, these reports are contradicted by the late produced documents, including the Poirier spreadsheet detailing thousands of cash transactions processed by HM. (Doc. No. 498-7)

### (1) Kenneth Schafermeyer, R.Ph., Ph.D.

Schafermeyer was retained by HM to testify in support of its claimed damages resulting from unpaid claims and lost profits. He relies on claims summary spreadsheets prepared by HM and represented as "complete and accurate summaries" of all claims submitted to ESI. Those representations, however, are admittedly false. Schafermeyer calculated damages on unpaid claims based on the cost he presumed HM would be paid for these prescriptions. He made no attempt to validate HM's claims summaries because he was not given the actual claims data that would have allowed him to do so. Schafermeyer acknowledged that prescription reimbursement is generally the lower of (1) estimated acquisition cost (EAC)[7] for drug ingredients plus a dispensing fee or (2) the pharmacy's usual and customary (U&C) charge for the same service (Schafermeyer Report at 5), but disregarded the U&C price in his analysis, explaining that without records of cash transactions, "there was no basis for determining a usual and customary price." (Id. at 5) HM has since produced those cash transactions records.

Because the Court is taking ESI's Daubert motions and motions for sanctions together, the Court notes that some of Schafermeyer's opinions are speculative and would not be admissible. In particular, his opinions on HM's unpaid claims improperly assume that every claim submitted (plus refills) would have been paid, regardless of whether it was actually covered and payable under the terms of the Provider Agreement or the patient's prescription drug plan. Schafermeyer's opinions on HM's lost profits through August 2017 assume that HM would still be in business, and fail to take into account any other factors that may have affected HM's profits, such as changes in plan design, coverage, participants, or other PBM changes. Moreover, Missouri law does not allow recovery of lost profits beyond the notice period where, as here, the

---

[7] According to Schafermeyer, EAC is equal to a maximum allowable cost for multiple-source products if one exists; otherwise EAC is based on a percentage of the average wholesale price (AWP). (Schafermeyer Report at 5 n. 5,6)

- 11 -

contract is terminable at will. See Children's Broad Corp. v. Walt Disney Co., 245 F.3d 1008, 1019 (8th Cir. 2001); Asamoah-Boadu v. State, 328 S.W.3d 790, 796-97 (Mo. Ct. App. 2010).

In any event, the Court finds that all of Schafermeyer's analyses and damages calculations, "based on information provided by [HM] and represented to [him] as true, accurate and complete" (Schafermeyer Report at 19), are unreliable and suspect. It is now clear that Schafermeyer did not have full, accurate and complete information, as evidenced by the thousands of pages recently produced and attributable to HM's discovery misconduct. There is no right to rehabilitate Schafermeyer at this late date. The only appropriate sanction therefore is to exclude his opinions in their entirety.

### (2) Loyd Allen, R.Ph., Ph.D.

In his expert report, Allen opines about the pharmacy industry and compound pharmacies specifically; the "clinical appropriateness" of formulations that HM claims to have used in preparing certain compound medications; and FDA approval and AWP pricing generally. HM maintains that Allen's opinions regarding "the FDA and its pharmaceutical approval policies" are relevant to its tortious interference claim because the opinions go to: (a) whether statements in letters that ESI allegedly sent to patients "are in fact misleading"; and (b) HM's allegation that ESI sought to "end coverage" of drugs compounded by HM and "other independent compounding pharmacies[.]" (Doc. No. 494 at 8-9) HM also contends that Allen's testimony regarding "clinical appropriateness" is relevant to its tortious interference claim, if ESI rejected claims as to "widely recognized and used formulas as part of its 'Compound Management Solution' . . . ." (Id. at 9) The Court has always been clear that it would proceed to trial on the parties' contract-based claims before addressing HM's remaining claims. Nevertheless, Allen's opinions may become relevant if for example ESI takes the position that HM misrepresented its

- 12 -

use of non-FDA approved compounds. For this reason the Court will reserve ruling on ESI's motion to exclude Allen's testimony and report pertaining to the FDA and its pharmaceutical policies and clinical appropriateness.

Further, Allen's opinion regarding the AWP of prescription drugs is unreliable and suspect because it is based on unsupported (and now admittedly false) representations from HM and Malkin that HM had no cash transactions. Specifically, Allen operated under the premise that HM had no cash business and thus no usual and customary pricing model to determine, for purposes of reimbursement, which was the lessor of the two – AWP or U&C. (Allen Report at 28) As a result, Allen concluded that "the only option [HM] had was to use the AWP plus fee model, which was used appropriately and consistently." Id. As discussed above, the Court has determined that an appropriate sanction for HM's conduct in misrepresenting its cash business and then producing records of cash transactions well after the close of discovery is to exclude those portions of the experts' opinions that rely on those misrepresentations. Thus, the Court will exclude Allen's AWP opinion.

### (3) Richard Moon, PharmD, R.Ph., FIACP

In his expert report, Moon opines on compound billing practices, and specifically how compound medications are priced; delivery and co-payments, and specifically how the compound pharmacy industry treated the "collection" of copayments and why HM believed its practices were consistent with those practices; and pharmacy marketing, and specifically what the industry considers to be a "preprinted prescription form."

Moon's opinions pertaining to how the compound pharmacy industry treats the collection of copayments and what the industry considers to be a preprinted prescription form are directly relevant to the parties' contract based claims and thus relevant and admissible. However, his

opinion as to why HM believed its practices were consistent with these standards and practices is not. First, it is not appropriate for an expert witness to opine on a party's state of mind. In re Genetically Modified Rice Litigation, 666 F. Supp. 2d 1004, 1025 (E.D. Mo. 2009). Secondly, a party's state of mind, intent or knowledge is not relevant on a breach of contract claim. Under Missouri law, a breach of contract claims includes the following essential elements; (1) the existence of a valid contract; (2) the defendant's obligation under the contract; (3) a breach by the defendant of that obligation; and (4) resulting damages. CitiMortgage, Inc. v. Just Mortg., Inc., No. 4:09 CV 1909 DDN, 2012 WL 1060122, at *11 (E.D. Mo. Mar. 29, 2012). This portion of Moon's opinion is further suspect and unreliable based on the late produced documents.

Moon can also opine on industry standards for compound billing practices generally, but for the reasons stated above the Court will strike as unreliable his opinion, based on unsupported (and now admittedly false) representations from HM and Malkin, that "[t]he vast majority of the pharmacies during the Relevant Period that billed compounds did not have cash paying business, as was the case with HM Compounding." (Moon Report at 3)

### III. Summary judgment motions

The Court notes that all of the documents at issue were produced by HM well after the close of discovery and briefing of summary judgment motions. Although no party has requested an opportunity to supplement their summary judgment motions, in light of the Court's rulings herein, the Court will grant the parties until **Wednesday, October 31, 2018** to file any supplemental briefing in support of their respective summary judgment motions. Any responses shall be filed **by the end of business on Monday, November 5, 2018** and any replies shall be filed **by the end of business on Tuesday, November 6, 2018**.

Accordingly,

- 14 -

**IT IS HEREBY ORDERED** that Express Scripts' Motion for Reconsideration and For Sanctions Concerning the Production of Cash Transactions [498] is **GRANTED** in accordance with the rulings herein.

**IT IS FURTHER ORDERED** that Express Scripts' Motion to Exclude Expert Report and Testimony of Lloyd Allen [466] is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Express Scripts' Motion to Exclude Expert Report and Testimony of Kenneth Schafermeyer [469] is **GRANTED**.

**IT IS FURTHER ORDERED** that Express Scripts' Motion to Exclude Expert Report and Testimony of Richard Moon [474] is **GRANTED in part and DENIED in part.**

**IT IS FINALLY ORDERED** that that Express Scripts' Request for Terminating Sanctions in Connection with Plaintiffs' Discovery Misconduct [521] is **GRANTED in part and DENIED in part** in accordance with the rulings herein.

Dated this 26th day of October, 2018.

_John A. Ross_
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE