# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| HM COMPOUNDING SERVICES, LLC, and HMX SERVICES, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 4:14-CV-01858 JAR ) |
| EXPRESS SCRIPTS, INC., | ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs HM Compounding Services, LLC and HMX Services, LLC (collectively "HM")'s Motion for Partial Summary Judgment (Doc. No. 472) and Defendant Express Script ("ESI")'s Renewed Motion for Summary Judgment (Doc. No. 478). The motions are fully briefed and ready for disposition.[1] Oral argument was held on October 12, 2018.

**I.   Background**

The background of this case has been set out in detail in previous orders and will not be repeated here. Briefly, ESI terminated HM from its pharmacy provider network for misrepresenting during a re-credentialing process that it never waived or discounted member copayments. HM filed an amended complaint asserting various statutory and common law claims against ESI, which ESI moved to dismiss. The Court granted ESI's motion in part. ESI then filed counterclaims for, *inter alia*, breach of contract. ESI moved for partial summary

---

[1] With respect to HM's motion for partial summary judgment, ESI has requested leave to file a sur-reply in opposition (Doc. No. 516) and HM has requested leave to file a sur-response (Doc. No. 518). Because the Court has considered ESI's sur-reply and HM's sur-response, their motions for leave will be granted. The Court has also considered ESI's supplemental memorandum of law in support of its renewed motion for summary judgment (Doc. Nos. 561, 562) and HM's response thereto (Doc. No. 570).

judgment on HM's remaining claims[2] based on HM's alleged breaches of the parties' Pharmacy Provider Agreement and ESI's resulting right to terminate that Agreement. The Court denied partial summary judgment, finding factual disputes about the materiality of HM's alleged breach(es). (Doc. No. 340) ESI filed a motion for reconsideration of the Court's order denying partial summary judgment (Doc. No. 345), which the Court denied (Doc. No. 353).

Over the next year, the parties engaged in extensive and, at times, contentious discovery, necessitating the appointment of a Special Master. As detailed in its October 26, 2018 Memorandum and Order, the Court found HM's late production of thousands of documents – including records of cash transactions and system edits and overrides for prescription claims submitted to ESI for reimbursement ("the audit trail") – after repeated (and now admittedly false) representations to opposing counsel, the Special Master and this Court that it had searched "all sources," produced "all responsive documents", and had "no other documents" responsive to ESI's requests, grossly negligent and sanctionable.

After careful consideration, the Court entered measured sanctions to address HM's misconduct and reckless disregard for the truth of the matters. Specifically, the Court ruled that it would allow ESI to use the late produced documents and information derived therefrom as appropriate and prohibit HM from doing so. The Court also ruled that it would admit the spreadsheet created in 2014 by Marc Poirier, HM's Chief Financial Officer, as evidence of thousands of cash claims for prescriptions priced below AWP and the U&C cash prices HM was submitting to ESI for reimbursement. Lastly, the Court excluded the opinions of HM's damages

---

[2] The remaining claims are: violation of the Sherman Act, 15 U.S.C. § 1 (Count I); violation of the Donnelly Act, N.Y. Gen. Bus. L. § 340.1 (Count II); Deceptive Trade Practices: violation of New York General Business Law § 349 (Count V); breach of contract (Count VII); breach of the implied covenant of good faith and fair dealing (Count VIII); declaratory judgment (Count X); and injunctive relief (Count XI). ESI did not move on HMC's claim for tortious interference with a business expectancy (Count IX), which it argued lacked factual support (see Doc. No. 194 at 1 n.1).

expert Kenneth Schafermeyer in their entirety and those portions of the opinions of HM's experts Loyd Allen and Richard Moon that did not consider the U&C issue based upon HM's false representations that they had no cash transactions. (Doc. No. 543) Recent filings suggest HM continues to disclose additional new documents requested by ESI in discovery but not previously produced. (See Doc. No. 542) It is in this context that the Court granted the parties an opportunity to supplement their summary judgment briefing by October 31, 2018. ESI filed a supplemental memorandum of law in support of its renewed motion for summary judgment (Doc. Nos. 561, 562) which is now fully briefed; HM did not.[3]

## II. Facts

HM was a member of ESI's pharmacy provider network pursuant to a Pharmacy Provider Agreement ("Provider Agreement") and Network Provider Manual ("Provider Manual") (collectively the "Agreement").[4] Section 2.4.a of the parties' Provider Agreement, titled "Copayments," provides:

> Provider ***shall collect*** from Members the lesser of the Usual and Customary Retail Price amount or ***the applicable Copayment*** indicated by ESI, or when applicable, the full Copayment when indicated by ESI, through its online processing system or if online processing is unavailable, in accordance with the Provider Manual. Copayments may not

---

[3] HM requests leave to file its response to ESI's Supplemental SOF, which it "inadvertently omitted" from its filing in response to ESI's renewed motion. (Doc. No. 575) Upon consideration, the Court will grant HM's motion for leave. The Court notes that HM disputes the majority of ESI's supplemental facts. The Court has reviewed the statements, the responses, and the supporting documentation and will accept facts as supported by appropriate admissible evidence.

[4] HM disputes the operative contractual materials relied upon by ESI and, in particular, which version of the Provider Manual governs the timeline of events. (Plaintiffs' Response to Defendants' SOF, Doc. No. 492 at ¶¶ 4-5; Plaintiffs' Response to Defendant's Supplemental SOF, Doc. No. 575-1 at ¶ 23) However, as this Court has previously noted (see Doc. No. 340 at 8 n.7), all relevant provisions of the Manuals concerning collection of copayments, immediate termination, honoring sponsors' plan design, and ESI's right to credential a pharmacy, are substantively identical. See Watkins Inc. v. Chilkoot Distributing Inc., 719 F.3d 987, 994 (8th Cir. 2013) (even if a factual dispute persisted as to which agreement controlled the parties' dispute, the district court did not err by analyzing whether a breach occurred under either agreement for purposes of summary judgment).

be waived or discounted and, unless directed by ESI in writing, Provider shall not collect any greater amount or any other taxes, fees, surcharges or compensation from any Member for any Covered Medications or services provided in connection therewith. In no event will ESI be liable for any Copayment. (Emphasis added.)

With regard to the collection of co-payments, the Provider Manual states that "[HM] may not institute Member copayment discount programs or otherwise alter a Member Copayment, unless such waiver or discount is required by law. If [ESI] becomes aware of an copayment or cost-sharing discounts being offered by [HM] – either through audit, investigation, Member statements, or review of [HM]'s website or other advertising materials – [HM] may be subject to immediate termination."

Section 2.4 of the Provider Manual requires that that "[a]ll claims [ ] be submitted accurately and completely, online in the current NCPDP (National Counsel for Prescription Drug Programs) (vD.0) HIPAA-approved format . . ." Section 2.7 of the Provider Manual, titled "On Line Reimbursement Calculation," states that ESI will reimburse HM for the "lesser of: AWP (average wholesale price) ingredient cost minus contracted brand discount plus contracted brand dispensing fee for the applicable network . . . OR . . . Usual and Customary Retail Price." Section 2.9 of the Provider Manual, titled "Compounds," states that "Network Providers shall not submit compound claims with an inflated average wholesale price (AWP) or . . . manipulate the Usual and Customary retail price."[5]

Section 4.2 of the Provider Agreement is titled "Termination." Section 4.2.a of the Provider Agreement, titled "Without Cause," states that the "Agreement may be terminated by ESI without cause upon at least thirty (30) days written notice."

Section 4.2.b of the Provider Agreement, titled "Breach," states that:

---

[5] The Provider Manual's PBM Glossary defines the Usual and Customary Retail Price of a drug as "the usual and customary retail price of a Covered Medication in a cash transaction at the Pharmacy dispensing the Covered Medication (in the quantity dispensed) on the date that it is dispensed."

In the event a party defaults in the performance of any of its obligations under this Agreement . . . the other party . . . may give written notice to the Defaulting Party of such breach. If the Defaulting Party has not cured such breach to the reasonable satisfaction of the Non-Defaulting Party within thirty (30) days after it receives such notice, the Non-Defaulting Party shall have the right to immediately terminate the Agreement. . . . These rights and remedies are in addition to any and all other rights that exist or are available or may exist or be available to ESI pursuant to this Agreement.

Section 4.2.c of the Provider Agreement, titled "Immediate Termination," provides that, notwithstanding Section 4.2.b, ESI shall have the right to immediately terminate the Agreement in the event that:

(i) [HM] ceases to be licensed by the appropriate licensing authority; (ii) [HM] submits a fraudulent prescription drug claim or any information in support thereof; … (iv) [HM] routinely fails to designate on its claims submission and/or supporting documents the information required by [ESI] or fails to comply with [ESI's] policies and procedures including, but not limited to, the Provider Manual and/or quality assurance and/or utilization review procedures; (v) any representation to [ESI] or any response to a question set forth on the Provider Certification is untrue or becomes untrue; … (vii) [ESI] determines that [HM] is dispensing Covered Medications in violation of any applicable law, rule and/or regulation; … (x) [HM] breaches any of its representations and warranties set forth in this Agreement or any other document provided to [ESI]; [or] (xii) [HM] fails to comply with any audit or investigative request, including the provision of information, made by [ESI] within the time period stated in such request…. (Emphasis added).

Likewise, the Provider Manual gives ESI the right to immediately terminate the Agreement in the event that "(iv) [HM] fails to comply with [ESI]'s policies and procedures including, but not limited to, the Provider Manual …; (v) any representation to [ESI] or any response to a question set forth on the Provider Certification is untrue or becomes untrue; … (x) [HM] breaches any of its representations and warranties set forth in this Agreement or any other document provided to [ESI] …"

The Provider Manual specifically incorporates various State addenda, including a New Jersey Addendum ("the Addendum"). By its express terms, the Addendum applies when a pharmacy dispenses "covered medications to members of an HMO, Insurer, or Carrier licensed

under New Jersey law (as such terms are defined under New Jersey law)." The provisions of the Addendum supersede the terms of the Provider Agreement and govern the parties' relationship whenever "there is a conflict between the terms and conditions set forth in this Addendum and the terms and conditions set forth in the Provider Agreement." (Doc. No. 473-1)

Section 6.a. of the Addendum provides that if the Provider Agreement is terminated, "[ESI] shall give [HM] at least ninety (90) days prior written notice. In the event of termination, [HM] has the right, within ten (10) days of receipt of notice, to request a hearing. **The foregoing shall not apply when the termination is based on … breach of the Provider Agreement by [HM]** …" (Id. at 48) (Emphasis added).

Section 6.b. provides that HM has the following rights upon receipt of the termination notice: "(i) the right to obtain a reason for the termination in writing from [ESI] if the reason is not otherwise stated in the termination notice; (ii) the right to request a hearing, and any exceptions to that right; and (iii) the right to obtain the procedures for exercising either right. These rights, as applicable to [HM], shall be as described in N.J.A.C. 11:24-15.2(b)(1), 11:24-3.5." (Id.)

### III. Legal standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether

summary judgment is appropriate in a particular case, the Court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). Where parties file cross-motions for summary judgment, the legal standard does not change. Each motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. Jaudes v. Progressive Preferred Ins. Co., 11 F. Supp.3d 943, 947 (E.D. Mo. 2014).

## IV. Discussion

### A. HM's motion for partial summary judgment

HM moves for summary judgment on Count VII (breach of contract) and Count VIII (breach of the implied covenant of good faith and fair dealing) of its first amended complaint and Counts I and II of ESI's counterclaim for breach of contract. Count I of ESI's counterclaim alleges that HM's initial filing of this lawsuit in New York State Court was a material breach of the Agreement's mandatory forum selection clause; Count II alleges that HM's misrepresentations on the May 2014 Provider Certification, its circumvention of plan design, and submission of inflated prices, constitutes a material breach of the Agreement. HM also moves for summary judgment on ESI's affirmative defenses 12, 14, 16 and 18, which assert respectively, that HM's claims are barred because: ESI's termination of HM from the pharmacy provider networks was justified and proper under the terms of the Provider Agreement; ESI has complied with its contractual obligations; HM has sustained no losses as a result of any action or inaction on the part of ESI; and ESI retains the right to terminate the Provider Agreement without cause upon 30 days written notice."

In support of its motion, HM argues that ESI's termination of the Provider Agreement is invalid because ESI violated the Addendum's notice and hearing requirements for termination. Specifically, ESI's July 31, 2014 termination letter failed to include a statement regarding HM's right to obtain the reasons for termination, right to a hearing, and right to obtain procedures for exercising those rights. HM also argues the termination letter gave only one reason as the basis for termination, i.e., that HM failed to accurately answer Question 29[6] of the credentialing questionnaire regarding the "collection of copayments",[7] and failed to provide HM with all of the reasons for termination upon which it now relies.

In its opposition to HM's motion, ESI argues that the Addendum's scope is limited to regulating HMOs or similarly licensed organizations licensed in New Jersey and that HM has no evidence that it served members of HMOs or their equivalents or even health insurance companies generally. ESI submits a list of all HMOs licensed in the state published by the State of New Jersey (Doc. No. 495-5), none of which appear in its claims data. ESI further argues that the notice and termination rights set forth in Section 6.b of the Addendum "shall not apply" when, as here, termination is based on a breach of the Provider Agreement. Lastly, ESI asserts that under Missouri law, it is not limited to the breaches cited in its notice to explain its termination of HM and is not prevented from arguing that HM's multiple breaches preclude its claims, citing Hosp. Prods., Inc. v. Sterile Design, Inc., 734 F. Supp. 896, 903 (E.D. Mo. 1990) ("The Court is unaware of any general requirement under Missouri law that a party seeking to

---

[6] Question 29 of the Provider Certification asked: "Do you or your pharmacy(ies) ever waive or offer a reduction of member copayments? If Yes, please provide a copy of your written policy relating to the waiver/reduction of copayments." HM answered "no."

[7] ESI disputes this. The July 31, 2014 termination letter stated that HM misrepresented during the re-credentialing process that it did not waive or discount copayments and that HM was being terminated in accordance with Section 4.2(c) of the Provider Agreement and Appendix B of the Provider Manual. (Doc. No. 496 at ¶ 13).

terminate a contract must announce its grounds for doing so at the time of termination and be thereafter limited to relying on only those grounds in defending a subsequent action for breach of contract.").

HM replies that given the plain language of the Addendum and rules of contract interpretation, the fact that an exclusion or "safe harbor" for alleged breaches of contract was included in Section 6.a of the Addendum, but not Section 6.b, demonstrates the exclusion does not apply to Section 6.b. In further reply, HM argues that ESI should be precluded from coming forward with additional reasons for termination because a pharmacy could not perfect the right to appeal termination without knowing all of the reasons given for termination. Lastly, HM argues that the Addendum applies whenever the pharmacy dispenses covered medications to members of an HMO, Insurer, or Carrier licensed under New Jersey law (as those terms are defined under New Jersey law); it is not limited to pharmacies that only service members of HMOs. (Id. at 6) HM relies on ESI's records of all claims submitted by HM which reflect the carriers that administered and/or paid each of these claims. (See Doc. No. 473-3) [8] HM compares the carrier names on ESI's spreadsheet with a list of licensed insurance carriers published on a State of New Jersey webpage (Doc. No. 473-2) and identifies a number of them which are licensed in New Jersey.[9]

HM also notes that ESI's arguments regarding the applicability of a state addendum were rejected in a similar case, Alternative Medicine v. Express Scripts, Case No. 4:14CV01469-CDP (E.D. Mo. Mar. 25, 2016) (Doc. No. 210 at 70) ("As a matter of law, the [state] addendum does

---

[8] ESI disputes this spreadsheet represents the entirety of prescription claims submitted by HM. (Doc. No. 496 at ¶ 7)

[9] Specifically, HM identifies Amalgamated Life Insurance Company; Express Scripts; Guardian; Liberty Mutual; The Hartford; The Travelers Companies; and Zurich American Insurance Company.

apply to this case. I don't know why it was in there if it didn't apply to this case.").[10] (Doc. No. 472 at 7-8)

Whether the Addendum applies to the parties' Agreement is an issue of contract interpretation. "The cardinal principle" of contract interpretation is "to ascertain what the parties themselves meant and understood." Monarch Fire Protection District of St. Louis County, Missouri v. Freedom Consulting & Auditing Services, Inc., 644 F.3d 633, 638 (8th Cir. 2011). In interpreting a contract, the Court considers the document as a whole, giving the words contained therein their ordinary meaning, Schnuck Markets, Inc. v. First Data Merch. Servs. Corp., 852 F.3d 732, 738 (8th Cir. 2017), and avoids an interpretation that renders other provisions meaningless, Gohagan v. Cincinnati Ins. Co., 809 F.3d 1012, 1015 (8th Cir. 2016).

Guided by these principles of contract interpretation, the Court has carefully reviewed the parties' Agreement as a whole and finds the Addendum was intended to apply to the parties' Agreement. This is clear for several reasons, not the least of which is that the Addendum, by its plain terms, applies if HM provided services to "members of an HMO, Insurer or Carrier licensed under New Jersey law (as such terms are defined under New Jersey law)."[11] If the parties had intended to limit application strictly to pharmacies servicing members of HMOs or licensed equivalents, as ESI contends, then omitting "Insurer" and "Carrier" would have clearly manifested that intent. See New Madrid County Reorganized School Dist. No. 1 v. Continental

---

[10] In Alternative Medicine, ESI argued the Addendum did not apply to the parties' Provider Agreement because the state statutes cited therein applied only to HMOs and Insurers, and not to pharmacy benefits managers such as ESI.

[11] "HMO" is defined as "any individual or entity that undertakes to provide or arrange for basic comprehensive health care services through an organized system that combines the delivery and financing of health care on a prepaid basis to members"; an "Insurer" is defined as "any insurance company authorized to transact the business of insurance in New Jersey"; and a "Carrier is defined as "an insurer authorized to transact the business of health insurance . . . a hospital service corporation … a medical service corporation … or a health service corporation." N.J.A.C. § 11:24-1.2.

Cas. Co., 904 F.2d 1236, 1240–41 (8th Cir. 1990) ("If Continental Casualty wanted to exclude this type of liability from its policy it could and should have done so explicitly. Absent an explicit exclusion, we must apply the language as written."). Further, adopting ESI's interpretation of the Addendum would mean the New Jersey legislature provided three different definitions that all refer to "HMO," rendering the definitions of "Insurer" and "Carrier" meaningless. When construing contracts, "interpretations should be sought that give meaning to all parts of the contract, and interpretations which render meaningless parts of the contract should be avoided." Schoemehl v. Renaissance Elec. Co., 334 F. App'x 772, 776 (8th Cir. 2009) (quoting Beister v. John Hancock Mut. Life Ins. Co., 356 F.2d 634, 641 (8th Cir. 1966)). See also DeJong v. Sioux Center, Iowa, 168 F.3d 1115, 1120 (8th Cir. 1999) (internal quotation omitted).

The fact that the Addendum applies to the parties' contractual relationship does not, however, mean summary judgment should be granted in favor of HM. The notice and termination rights set forth in Section 6.b of the Addendum must be read in conjunction with Section 6.a, which grants pharmacies, in certain circumstances, the right to notice and a hearing if the Provider Agreement is terminated. These rights "shall not apply," however, when termination is based on a breach of the Provider Agreement. If the right to notice of termination under Section 6.a does not apply, and no termination notice is due, then the rights accruing with such notice pursuant to Section 6.b likewise do not arise. ESI terminated HM for breaches of the Provider Agreement. Therefore, the right to receive notice of termination in accordance with Section 6.a, as well as any rights accruing with such notice pursuant to Section 6.b, did not apply to HM, and no breach of HM's rights under the Addendum by ESI occurred. For these reasons, HM's motion for partial summary judgment will be denied.

### B. ESI's renewed motion for summary judgment[12]

ESI argues it is entitled to summary judgment for several reasons. First, HM cannot establish two required elements of its breach of contract claim: (i) that it performed in accordance with the terms of the parties' Agreement; and (ii) that ESI breached the parties' Agreement. To establish a breach of contract under Missouri law, the party claiming breach must show: (1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff. Smith Flooring, Inc. v. Pa. Lumbermens Mut. Ins. Co., 713 F.3d 933, 941 (8th Cir. 2013). If a party fails to prove one of these elements, his claim fails. See Sch. Dist. of Kansas City, Missouri v. Missouri Bd. of Fund Comm'rs, 384 S.W.3d 238, 259 (Mo. Ct. App. 2012).

ESI has asserted multiple grounds for terminating the Agreement based on HM's breaches of the Agreement, including HM's failure to collect copayments. The record has developed considerably since the Court previously considered the issue of HM's copayment collection in February 2017. At that time, the Court concluded it could not enter summary judgment in favor of ESI based on HM's collection rate of "less than 20 percent," and having "no indication that ESI's 2014 investigative review/audit was based on a random sample of prescriptions dispensed by HM from which the Court could extrapolate a pattern of non-collection." (Doc. No. 340 at 14) HM has now produced all of its copayment collection records

---

[12] In addition to HM's contract claim (Count VII), which encompasses a claim for breach of the implied covenant of good faith and fair dealing (Count VIII), ESI has renewed its motion for summary judgment as to HM's claims for tortious interference with a business expectancy (Count IX), anti-trust and deceptive trade practices (Counts I-II, V), declaratory relief (Count X) and injunctive relief (Count XI). The Court has been clear that it would proceed on the contract based claims before addressing HM's remaining claims. For that reason, to the extent ESI is moving for summary judgment on claims other than the contract based claims, the Court will reserve ruling.

which show, according to ESI, that HM collected only 2.7 percent of the copays owed and thus failed to perform under the Agreement. HM responds that regardless of the dispute about HM's actual collection rate (HM maintains that its collection rate is approximately eight to nine percent)[13], the parties disagree on the basic nature of HM's obligation to collect copayments from its customers. HM contends it materially performed by accurately charging all copayments and using its best efforts to collect.

The materiality of a given breach is ordinarily a question of fact. River Oaks Condo. Ass'n v. Donovan, No. 4:12CV01880 SPM, 2013 WL 4666343, at *10 (E.D. Mo. Aug. 30, 2013). However, as with any other factual dispute, in determining whether there is a genuine issue of material fact, the Court must determine whether a reasonable jury, faced with the evidence presented, could return a verdict for the non-moving party. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 599 (8th Cir. 2009). Now based on a complete record, the Court finds that whether HM's collection rate is 2.7 percent, as asserted by ESI, or 8-9 percent, as asserted by HM, the number is so woefully inadequate that no reasonable jury could find HM substantially complied with its contractual obligation to collect copayments pursuant to Section 2.4a of the Provider Agreement.

HM has designated Richard Moon as its expert to opine on general industry practice regarding delivery and collection of copayments by compounding pharmacies. (Moon Report, Doc. No. 476-1) While industry standards may be relevant on this issue, the parties here are sophisticated business entities who mutually negotiated and agreed to the specific language of their Agreement that "Provider shall collect from Members . . . the applicable copayment," and

---

[13] The difference in the parties' calculations, according to HM, is the result of differing methodologies, as well as whether the relevant percentage number is the percentage of overall copayments collected (ESI) or overall copayment dollars collected (HM).

giving ESI an immediate right to terminate the Agreement for HM's failure to do so. Based on the record evidence, the Court finds and concludes that HM failed to substantially comply with its contractual obligation to collect copayments, thereby breaching the Provider Agreement.

### C. ESI's supplement to renewed motion for summary judgment

In its supplement in support of its renewed motion, ESI argues that new undisputed evidence, specifically the Poirier spreadsheet, establishes that HM submitted artificially inflated U&C/cash prices to ESI for reimbursement in direct violation of Sections 2.4, 2.7 and 2.9 of the Provider Manual. These sections require, *inter alia*, that all claims be submitted "accurately and completely" and prohibit network providers from submitting compound claims with an "inflated average wholesale price (AWP)" or "manipulat[ing] the Usual and Customary retail price." ESI also submits a supplemental report from its expert Dr. Richard Ptachcinski opining that by overstating its U&C cash price in over 9,800 identified claims, HM overcharged ESI by millions of dollars. (Doc. Nos. 561-4, -5, -6) According to ESI, this "U&C Cash Price Breach" gave ESI the right to immediately terminate the Agreement under Section 4.2c (ii) and (iv) of the Agreement and provides an additional basis to grant summary judgment, separate and apart from HM's failure to collect copays.

HM argues that whether the Poirier spreadsheet reflects amounts actually charged to and collected from cash customers is a disputed issue of fact. HM submits a declaration from Mr. Malkin stating that the Poirier spreadsheet is not a listing of cash prices that were actually charged to customers. (Malkin Decl., Doc. No. 515-2 at ¶ 9) Similarly, Mr. Malkin testified on deposition that HM did not charge cash customers a different price than what it charged ESI for the same medication. (See id. at ¶¶ 6-7; Malkin Dep. Tr. 40:8-41:6 (Jan. 14, 2016) ("Q. . . . was there a price difference between what would be, how you would price an insured claim versus a

cash claim? A. Same."). Mr. Chervinski testified that "[m]y [HMC's] usual and customary was AWP." (Chervinski Dep. Tr. 111:24-112:9 (Mar. 1, 2018))

HM cannot create a question of fact with the testimony of Mr. Malkin and Mr. Chervinski alone. "[I]n order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Webb v. Lawrence County, 144 F.3d 1131, 1135 (8th Cir. 1998); Larson v. Kempker, 414 F.3d 936, 939 (8th Cir. 2005) (nonmoving party must show existence of facts on record creating genuine issue). See also Stanback v. Best Diversified Prods., Inc.,180 F.3d 903, 909 (8th Cir. 1999) (finding general statements in affidavits and depositions are insufficient to defeat a properly supported summary judgment motion). Moreover, the Court has prohibited HM from using any of the late produced documents related to cash transactions or the audit trail. Without these records, HM cannot possibly contradict what the spreadsheet shows, i.e., evidence of thousands of cash claims for prescriptions priced below AWP and the U&C cash prices HM was submitting to ESI for reimbursement.

ESI further argues that summary judgment must be granted because HM has no affirmative evidence of damages. Based on HM's extensive and continuing discovery violations, the Court has excluded the report and opinions of HM's damages expert and precluded HM from using any of the late produced documents or information derived therefrom. The issue is whether HM can prove damages through other means. As the party claiming damages, HM bears the burden of proving those damages to a reasonable degree of certainty. Brown v. Packaging Corp. of Am., No. 15-00230-CV-W-RK, 2016 WL 7494283, at *6 (W.D. Mo. June 27, 2016).

HM argues that its witnesses have sufficient knowledge of the damages suffered by HM such that expert testimony is not required. HM is correct that a business owner or employee who

has knowledge of the issues can testify as to damages, including lost profits. See Eagle Fuels, LLC v. Perrin, No. 10-00811-CV-W-SWH, 2014 WL 12601079, at *8 (W.D. Mo. Sept. 12, 2014) (citing Williams Construction, Inc. v. Wehr Construction, LLC, 403 S.W.3d 660, 666 (Mo. Ct. App. 2012)). However, under Missouri law, a plaintiff in a contract action has the burden of proving "the existence and amount of . . . damages with reasonable certainty." Cole v. Homier Distrib. Co., 599 F.3d 856, 864–65 (8th Cir. 2010) (quoting Ullrich v. CADCO, Inc., 244 S.W.3d 772, 779 (Mo. Ct. App. 2008)). When a claim involves lost-profit damages, the plaintiff must "provide[ ] an adequate basis for estimating lost profits with reasonable certainty." Id. (quoting Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc., 155 S.W.3d 50, 54 (Mo. 2005)). Failure to meet this burden properly results in summary judgment. See Celotex, 477 U.S. at 322; see also Manor Square, Inc. v. Heartthrob of Kansas City, Inc., 854 S.W.2d 38, 45 (Mo. Ct. App. 1993) (granting summary judgment for failure to put forth sufficient evidence to calculate damages with "reasonable certainty").

Rule 701 requires that lay witness opinion testimony be rationally based on the witness's generalized knowledge and experience. Fed. R. Evid. 701. Personal knowledge acquired through review of records prepared in the ordinary course of business, or perceptions based on industry experience, is a sufficient foundation for such testimony. See US Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 690 (8th Cir. 2009); Burlington Northern R.R. Co. v. State of Nebraska, 802 F.2d 994, 1004-1005 (8th Cir. 1986). Again, the Court has ruled that HM cannot use the late disclosed information and documents. Thus, HM's lay witnesses cannot use this information as a basis for proving damages with reasonable certainty.

In addition, both Mr. Malkin and Mr. Chervinski have indicated they have no knowledge of factual information necessary to form opinions regarding damages and lost profits. Both

testified at deposition that they have no knowledge of HM's financial records, including: (1) the general ledger showing all income and expenditures for HM (March 2, 2018 Malkin Depo Tr., Doc. No. 561-3 at 192:17-19; 193:9-18; March 1, 2018 Chervinski Depo. Tr., Doc. No. 561-2 at 246:12-16); (2) preparation of tax returns (Malkin Depo. at 160:25-161:1); (3) commissions paid by HM (Malkin Depo. at 161:22-163:1); (4) marketing expenses paid by HM (Malkin Depo. at 163:11-19; Chervinski Depo. at 173:2-6, 182:21-23); (5) monies owed to HM by other entities (Malkin Depo. at 165:10-17) (Chervinski Depo. at 168: 3-4, 169:21-23); and (6) any aspect of their accountants' work product (Malkin Depo. at 165:10-17). Without personal knowledge of this information, any testimony from Mr. Malkin or Mr. Chervinski would be purely speculative. And even if HM could submit general testimony on lost profits, the Court has held that Missouri law does not allow recovery of lost profits beyond the notice period where, as here, the contract is terminable at will. See Children's Broad. Corp. v. Walt Disney Co., 245 F.3d 1008, 1019 (8th Cir. 2001).

HM's reliance on its accountant Victor Delle Fave is similarly unavailing. To the extent Mr. Delle Fave would be reviewing and analyzing HM's financial condition, including revenues and profitability in the years preceding his employment, this is in the nature of expert testimony. Mr. Delle Fave was never disclosed as an expert witness and the deadline for doing so has long passed.[14] Further, Mr. Delle Fave cannot testify as a fact witness. He was not hired by HM until September 2014, after the parties' Agreement was terminated, and thus lacks the required personal knowledge to testify as to underlying events during the relevant time period. In sum, none of HM's witnesses have the requisite personal knowledge or the necessary factual bases for estimating damages with reasonable certainty.

---

[14] ESI's recent filing requesting leave to supplement its motion to exclude the testimony of Mr. Delle Fave and supplemental memorandum in support of its renewed motion for summary judgment (Doc. No. 579) further reinforces the argument that Mr. Delle Fave is an expert witness that was never disclosed.

Finally, HM's passing reference in a deposition to approximately $110,000 of withheld funds does not constitute sufficient evidence to establish damages. Again, it is HM's burden to prove damages to a reasonable degree of certainty. The deposition is unclear as to the nature of these disputed funds and the funds are not specifically tied to any particular claims. HM may have a claim to these funds, but based on the limited testimony it is insufficient proof of damages. HM cannot meet its burden on such a record.

V.      **Conclusion**

The undisputed evidence establishes that HM breached the Provider Agreement by failing to collect copayments and by submitting manipulated U&C cash prices for reimbursement. Because HM breached the Agreement, ESI had a contractual right to immediately terminate HM and did not breach the Agreement. Further, HM has no evidence of damages, including lost profits. The report and testimony of its damages expert was excluded and none of HM's lay witnesses have the requisite personal knowledge or necessary factual bases for estimating damages with reasonable certainty. Mr. Delle Fave was never disclosed as an expert witness and cannot testify as a fact witness because he has no personal knowledge of events during the relevant time period. HM's inability to prove damages is entirely of its own making, the result of its gross misconduct in failing to comply with the discovery rules and this Court's orders and reckless disregard for the truth of the matters. For all these reasons, HM cannot establish the essential elements of its contract claims. ESI's renewed motion for summary judgment will therefore be granted as to HM's contract claims.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs HM Compounding Services, LLC and HMX Services, LLC's Motion for Partial Summary Judgment [472] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Express Script's Renewed Motion for Summary Judgment [478] is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Express Script's Motion for Leave to File a Sur-Reply in Further Opposition to Plaintiff's Motion for Partial Summary Judgment [516] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File a Sur-Response in Further Support of their Motion for Partial Summary Judgment [518] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Response to Express Scripts' Supplemental Statement of Facts [575] is **GRANTED.**

Dated this 8th day of November, 2018.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**